159 So.2d 592 (1964)
AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
UNITED GAS CORPORATION, Defendant-Appellee.
No. 1009.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1964.
*593 Davidson, Meaux, Onebane & Donohoe, by John G. Torian, II, Lafayette, for plaintiff-appellant.
Plauche & Stockwell, by Fred Sievert, Jr., Lake Charles, for defendant-appellee.
Before TATE, FRUGE and SAVOY, JJ.
TATE, Judge.
The plaintiff insurer appeals from the dismissal of its suit.
Plaintiff brings this subrogation suit to recover for damages paid by it under a fire and property damage policy issued to its insured ("Zigler"). The plaintiff seeks recovery of some six thousand dollars damages sustained by an air conditioning unit which had been sold to Zigler by United Gas, the defendant.
The damages in question were sustained when a fire caused a plug in the air conditioning unit to melt out. As a result, the delicate interior mechanism of the unit was exposed to the atmosphere, became oxidized, and was consequently ruined.
The plaintiff insurer contends that United Gas is liable on several alternative grounds: (1) that the negligence of United Gas in installing or maintaining the unit was the cause of the fire which melted the fuse; (2) that, following the fire, United Gas breached a duty to discover the melting of the fuse or to report the possibility that the fire had melted the fuse; or (3) that, in any event, United Gas assumed such duty following the fire and was therefore liable for neglect by it in not properly performing such duty, under the principle of negotiorum gestio, see LSA-Civil Code Articles 2295 et seq.
1. As to the first ground of liabilitypretermitting whether this cause of *594 action was properly pleaded, the evidence does not prove that the cause of the fire was the improper adjustment of a regulator control by the defendant's employee, as contended. The thrust of the testimony by the plaintiff's expert on the question was solely to the effect that a deficiency in such adjustment might "tend" to cause the system "to become overheated." Tr. 96. (For that matter, although the regulator was adjusted by United Gas at installation time, Tr. 87, there is no showing that its subsequent maladjustment resulted from any act on the part of United Gas, rather than from the employees of Zigler, in whose custody the equipment was at all other times.)
2. As to the second ground of liability urged, we must set forth some surrounding facts in order to discuss this contention in context.
United Gas had sold the air conditioning unit to Zigler in 1955. When the initial warranty on the equipment expired in 1957, Zigler and United Gas entered into a "semiannual inspection and start-up agreement." Under this contract, United Gas agreed for a stipulated fee to perform certain specified routine lubrication and maintenance of the air conditioning and heating unit "at the beginning of each cooling and heating season." D-1, Tr. 38.
It is not contended that United Gas improperly performed any of these routine maintenance acts. Further, the agreement specifically provided that the maintenance contract did not include any service calls or other repair work other than those specified.
The alleged obligation of United Gas to discover or to warn of the melted plug arose from a special service call made by United Gas's employee. This occurred when Zigler, the owner, contacted United Gas after a fire of October 18, 1960 had damaged the room in which the air conditioning and heating unit was located.
As a result of the fire, the electrical wires and controls were burned, and the heating unit was not working. Zigler contacted United Gas for the express and only purpose, so far as the record shows, of asking it to make a temporary hookup so that heating could be furnished the building.
In order to make such arrangements for the temporary heating, United Gas's employee entered the control room some 36 hours after the fire. While there for that purpose (only), the employee did check for the plug by passing his hand over the hole of the plug which had melted. He did not discover that the plug was missing, however, because some melted tar had fallen across the plug-opening.
United Gas's employee made arrangements for the temporary heating. It was not discovered that the plug has melted until February of 1961, after new electrical controls were installed by another contractor. Finding that the unit still would not operate, United Gas's employee for the first time discovered that the plug had melted and that in October the melted tar had prevented his touch from discovering this fact immediately after the fire
The testimony reflects without contradiction that the purpose of the plug was to act as a safety valve by melting, in the event of malfunction producing a high temperature within the unit. However, exterior heat could also melt the plug. During normal operations, the plug was needed to prevent atmospheric oxidation and destruction of the unit's interior mechanism. This oxidizing process would ruin the unit within 48 hours after the plug was removed.
The evidence likewise clearly discloses that, if United Gas was under a duty to discover that the fuse was melted, the "touch" test conducted by its employee was insufficient to discover the melting of the fuse, and that in addition a "torch" or "visual" test should have been utilized.
The plaintiff-appellant argues, with considerable force, that United Gas was under the obligation to make such more adequate tests; this obligation being based upon the *595 admitted circumstances that the fire was of such a nature as reasonably to invite suspicion that the plug might have been melted, as well as the admitted knowledge of United Gas's employee that, if the fuse was melted, the mechanism would be ruined by oxidation within 48 hours after exposure to the atmosphere. Tr. 102. Further, the relationship of United Gas as the seller and maintainer of the equipment placed upon it by a greater duty than that of a stranger to safeguard the interests of its customer.
United Gas's employee was only called upon to make a temporary heating hookup, it is true, and he was not asked to check for any damage to the unit. It is urged, however, that nevertheless United Gas was under the further obligation to warn or inspect for the type of damage here in question, which it actually knew would be a reasonable result of fire damage, because of the specialized knowledge of the equipment which United Gas possessed as seller and maintainer thereof. Because of its specialized knowledge of a danger which its own customer may not have possessed, it is argued that United Gas was under an affirmative duty at least to warn its customer of the danger; rather than simply to perform the narrow duty for which specifically employed, without at the same time communicating to its customer the knowledge it gained while in the performance of this narrow duty, to the effect that the expensive equipment might be entirely ruined if the customer did not check for a danger of which United Gas knew or should have known.
In support of this argument, the plaintiff-appellant relies upon authorities such as: Johnson v. Supreme Truck & Trailer Service, La.App. 2 Cir., 119 So.2d 660; Hughes v. Louisiana Power & Light Co., La.App. 1 Cir., 94 So.2d 532; Gas Service Co. v. Payton, C.A. 8, 180 F.2d 505 (1950); Reciprocal Exchange v. Altherm, Inc., 142 Conn. 545, 115 A.2d 460 (1955); Miller v. Wichita Gas Co., 139 Kan. 729, 33 P.2d 130 (1934). (The first two cases deal with an affirmative act by a defendant with actual or implied knowledge that such act might damage a customer's property; the latter three deal with the high duty of one dealing with dangerous substances to warn of or to avoid damages to its customer coming to the knowledge of the defendant within the normal scope of its services, but of which the customer may not reasonably be aware.)
Able counsel for the plaintiff-appellant summarizes the principle represented by these decisions as follows: "When a person places himself or his property in the care of persons who hold themselves out to the world as skilled in any art, trade or profession, for the general inspection or for the correction of a specific defect or disease, the expert has an obligation to warn of or correct any incidental dangers of which he is cognizant due to his peculiar knowledge of his specialization." Cf. also: Annotation, "Breach of assumed duty to inspect property as ground of liability for damage or injury to third person", 6 A.L.R. 2d 284.
Although the plaintiff's argument in this respect is attractive, we do not think that such principle can be applied to hold United Gas liable under the present facts.
The owner called upon United Gas to make certain specific repairs, which had nothing at all to do with the air conditioning unit. The function for which United Gas was hired cannot reasonably be said to have included within its implied scope any duty with regard to possible damage to the air conditioning unit. United Gas's employee's casual observation of the conditions that gave rise to the danger to the customer's property, cannot be said to have brought home to United Gas that its specialized knowledge on a matter totally disconnected with that for which employed, might reasonably require it to warn the customer of this danger, in that the customer might be implicitly relying upon United Gas's specialized knowledge and its custodial relationship to the equipment in order to safeguard *596 such equipment from such type of damage.
Further, there is no evidence in the record from which we may infer that the danger of the melting of the plug, and its probable consequence of the ruin of the air conditioning unit, were not equally obvious to Zigler and his employees, who maintained year-round care and operation of the air conditioning and heating unit.
3. As to the third basis for liability urged, the plaintiff argues that, even if United Gas was not under a prior duty to discover or warn of the melting of the plug, nevertheless it assumed this duty when its employee did in fact check whether the plug was still intact after the fire. If the employee had made the proper tests at this time, undoubtedly, the melting of the plug would have been discovered in time to prevent the oxidation and ruining of the air conditioning mechanism.
The basis of this alleged ground for liability is the principle of negotiorum gestio, set forth by Articles 2295-2300 of our LSA-Civil Code. These provide that, if one voluntarily undertakes without authorization to manage the affairs of another, then the person undertaking this management must also assume the obligation to perform it with ordinary care and to complete it. See LSA-C.C. Articles 2295, 2298. See also, Comment, "Management of the Affairs of Another", 36 Tul.L. Rev. 108 (1961); Comment, "Negotiorum Gestio in Louisiana", 7 Tul.L.Rev. 253 (1933); Planiol, Civil Law Treatise (LSLI Translation, 1959), Volume 2, Sections 2273-2283.
The casual or curious act of United Gas's employee in passing his hand over the plug-hole to check if the plug was still intact, cannot in our opinion amount to a voluntary assumption by the employee of the duty to inspect for the danger of damage to the air conditioning unit. The casual curiosity which prompted the action, does not to us seem a sufficient intentional undertaking to "manage the affair" as to constitute a quasi-contractual assumption of "the tacit engagement to continue it and to complete it", LSA-C.C. Article 2295, so as to render the employee liable for the improper or negligent management of the affair, under the negotiorum gestio principle.
It is to be expressly noted that United Gas's employee passed his hand over to check for the plug on his own notion and casually, and that the customer or his employees did not know of or rely upon the employee's action in so checking for the plug.
For the foregoing reasons, the judgment of the trial court is affirmed, at the cost of the plaintiff-appellant.
Affirmed.