884 P.2d 841

**Jo BAER, Personal Representative of the Estate of Helmut W. Baer, Deceased, Plaintiff–Appellant,**

v.

**REGENTS OF the UNIVERSITY OF CALIFORNIA and Jerry Williams, M.D., Defendants–Appellees.**

No. 14774.

Court of Appeals of New Mexico.

Sept. 8, 1994.

Ray Tabet, Ray Tabet Law Offices, Albuquerque, for plaintiff-appellant.

Bradford C. Berge, David B. Lawrenz, Campbell, Carr, Berge & Sheridan, P.A., Santa Fe, for defendants-appellees.

*OPINION*

ALARID, Judge.

This appeal concerns a claim for wrongful death as a result of medical malpractice. The district court granted summary judgment in favor of Defendants, and Plaintiff appeals. The dispositive issue is whether a legally recognizable duty exists between a health care provider and an examinee in situations in which employees are required to undergo physical examinations as a condition of obtaining or retaining employment. For the reasons explained below, we hold such a duty does exist. We therefore reverse the summary judgment granted Defendant Regents of the University of California (Re-

gents) as employer of James Pederson (Pederson), the physician's assistant who examined Plaintiff's decedent. However, we affirm the summary judgment granted Defendant Dr. Williams because Plaintiff's cause of action against him is barred by the statute of limitations.

## BACKGROUND AND FACTS

Plaintiff's husband, decedent Helmut W. Baer, was a physicist who worked at Los Alamos National Laboratory from 1978 until his death in 1991. Regents conduct business in New Mexico and operate the Los Alamos National Laboratory (LANL) under contract with the Department of Energy. Dr. Williams was at all times material to this cause of action a physician employed by LANL. As part of the regular employment practice at LANL, Mr. Baer was required to undergo periodic physical examinations.

During his 1985 examination, chest x-rays revealed an abnormality in the right lung. Dr. Williams discussed the x-ray findings with Mr. Baer and indicated that the abnormal result should be pursued through his private physician. Mr. Baer's private physician conducted follow-up examinations, supplementary testing, and referred results to a third physician for additional interpretation. A little over one year later, subsequent to a December 1986 follow-up examination, Mr. Baer's private physician interpreted the lesion as benign, but recommended that it continue to be tracked in one year's time.

Apparently Mr. Baer failed to follow this recommendation because he was next examined at LANL by Dr. Williams in March 1988 as part of his regular employment. At that time, additional chest x-rays were taken and Dr. Williams once again recommended that Mr. Baer return to his private physician "for one more follow-up visit at which time comparison can be made between his current and previous x-ray studies." Mr. Baer did not, however, follow up with his private physician and was next examined at LANL during the course of his regular employment by Pederson, in July 1989.

During this examination, no chest x-rays were taken, and conflicting evidence makes uncertain whether Pederson was aware of Mr. Baer's chest condition. In any event, he was not x-rayed, and in July 1990 Mr. Baer was diagnosed by his private physician as having large cell carcinoma. He died in October 1991 after receiving medical treatment. Thereafter, in February 1992, Plaintiff initiated this lawsuit as the personal representative of the estate of Mr. Baer. Her complaint alleged, among other things, that Mr. Baer's private physician, as well as Dr. Williams "and other medical personnel at LANL" departed from the standard of knowledge, skill, and care in failing to diagnose a nodule in the lungs of Mr. Baer as being cancerous.

After Mr. Baer's private physician was granted summary judgment, the remaining defendants responded to Plaintiff's complaint by also moving for summary judgment on the basis that the action was time-barred and that no physician-patient relationship existed between Mr. Baer and Dr. Williams or any of the other medical personnel at LANL. The district court initially denied that motion, but later granted it following the filing of a motion for reconsideration. In the memorandum opinion announcing its decision, the district court held that the motion for summary judgment was proper because (1) Plaintiff's complaint had been filed more than three years after the time Dr. Williams last examined Mr. Baer; and (2) no physician-patient relationship existed between Mr. Baer and Dr. Williams or LANL. Plaintiff appeals that decision to this Court.

## DISCUSSION

### Standard of Review

Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Koenig v. Perez,* 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). The initial burden is on the movant to make a prima facie showing of the absence of any genuine material factual issues. *Romero v. Ole Tires, Inc.,* 101 N.M. 759, 761, 688 P.2d 1263, 1265 (Ct.App.1984). Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require a trial on the merits. *Dow v. Chilili Coop. Ass'n,* 105 N.M.

52, 54, 728 P.2d 462, 464 (1986). "On review, we consider the whole record for evidence that puts a material fact at issue." *Roth v. Thompson,* 113 N.M. 331, 335, 825 P.2d 1241, 1245 (1992). All reasonable inferences that may be drawn from the matters presented to the court must be resolved in favor of the party opposing the motion. *Gonzalez v. Gonzalez,* 103 N.M. 157, 164, 703 P.2d 934, 941 (Ct.App.1985).

### The Medical Malpractice Act Statute of Limitations

■ As an initial matter, we consider the impact of the Medical Malpractice Act statute of limitations on this appeal. *See* NMSA 1978, § 41–5–13 (Repl.Pamp.1989). As explained in *Roberts v. Southwest Community Health Services,* 114 N.M. 248, 250, 837 P.2d 442, 444 (1992), "the statute of limitations begins to run on the date that the malpractice occurred and expires three years from that date." Plaintiff concedes that Dr. Williams last examined Mr. Baer in March 1988, more than three years before the filing of the complaint. Nonetheless, Plaintiff argues that her complaint against Dr. Williams is not time-barred because Dr. Williams had a continuing duty to provide follow-up care which extended the statute of limitations period. As support, Plaintiff lists expert witness testimony and evidence contained in an affidavit.

However, Plaintiff recognizes that Dr. Williams was not Mr. Baer's private physician. Thus, the duty Plaintiff asserts Dr. Williams breached is created as a result of Dr. Williams' position as an employee of LANL. Therefore, Plaintiff's cause of action is ultimately against Regents as the employer or master, and not against Dr. Williams. Given the Medical Malpractice Act's statute of limitations period, we have little trouble setting aside Plaintiff's continuous duty argument and affirming the district court's summary judgment in favor of Dr. Williams. Dr. Williams' last examination of Mr. Baer was well outside of, and therefore, was barred by, the statute of limitations. Except for the recognized tolling exceptions to the statute of limitations rule, we decline to extend the aberrations in the period of time in which to file medical malpractice causes of action. *See* § 41–5–13 ("a minor under the full age of six years shall have until his ninth birthday in which to file"); NMSA 1978, § 41–5–22 (Repl.Pamp.1989) (the running of the statute of limitations shall be tolled upon submission of the case to the medical review commission); *see also Keithley v. St. Joseph's Hosp.,* 102 N.M. 565, 569, 698 P.2d 435, 439 (Ct.App. 1984) ("the statute of limitations may be tolled where a physician has knowledge of facts relating to medical malpractice and fails to disclose such facts"), *certs. quashed,* 102 N.M. 565, 698 P.2d 435 (1985).

Plaintiff's remaining claim is, therefore, against Pederson as an employee of LANL. As all parties concede, Pederson's July 1989 examination of Mr. Baer occurred within the period of time allowed for by the statute of limitations in relation to the filing of the complaint. It is the legal consequences of this remaining issue which we must now consider and which controls the outcome of this action. On appeal, the issue can be phrased as: Did Pederson owe Mr. Baer a duty recognized by law when performing the periodic physical examination on behalf of Regents?

### Question of Duty

■ It is well established in New Mexico that:

> In order to prove medical malpractice, a plaintiff has the burden of showing that (1) the defendant owed the plaintiff a duty recognized by law; (2) the defendant breached the duty by departing from the proper standard of medical practice recognized in the community; and (3) the acts or omissions complained of proximately caused the plaintiff's injuries.

*Blauwkamp v. University of N.M. Hosp.,* 114 N.M. 228, 231, 836 P.2d 1249, 1252 (Ct.App.), *cert. denied,* 114 N.M. 82, 835 P.2d 80 (1992); *see* SCRA 1986, 13–1101 (Repl.1991); *see also Schmidt v. St. Joseph's Hosp.,* 105 N.M. 681, 683, 736 P.2d 135, 137 (Ct.App.1987); *Smith v. Klebanoff,* 84 N.M. 50, 53–54, 499 P.2d 368, 371–72 (Ct.App.), *cert. denied,* 84 N.M. 37, 499 P.2d 355 (1972). "A defendant seeking summary judgment in a medical malpractice action bears the initial burden of

negating at least one of the essential elements upon which the plaintiff's claims are grounded." *Blauwkamp*, 114 N.M. at 231, 836 P.2d at 1252.

Defendants explain that the lack of a physician-patient relationship requires affirming the district court's granting of summary judgment in favor of Regents. However, to be more precise, the essence of Defendants' argument is actually whether periodic examinations conducted and paid for by an employer, whose purpose does not include treatment of the examinee, create a legally recognizable duty of care. As support, Defendants cite case law from other jurisdictions. *See Murphy v. Blum*, 160 A.D.2d 914, 554 N.Y.S.2d 640, 641 (1990) ("No duty exists concerning treatment or the giving of expert opinions if the doctor was retained solely to examine the plaintiff."); *but see Cleghorn v. Hess*, 109 Nev. 544, 853 P.2d 1260, 1263 (1993) ("When an employee is required, as a condition of employment, to submit to a medical examination, that examination creates a relationship between the examining physician and the examinee, at least to the extent of the tests conducted."); *Green v. Walker*, 910 F.2d 291, 296 (5th Cir.1990) (physician who conducts medical examination of employee pursuant to contract with employer, and pursuant to employment policy requiring employee to submit to such examination as condition of future or continued employment, has duty to conduct requested tests and diagnose results thereof, and to take reasonable steps to make information available timely to employee of any finding that poses imminent danger to employee's physical or mental well-being). We are persuaded by the reasoning in *Green* as well as the evidence of legislative intent contained in the Medical Malpractice Act.

NMSA 1978, Section 41–5–3(C) (Repl. Pamp.1989), explains that a malpractice claim "includes any cause of action arising in this state against a *health care provider* for medical treatment, lack of medical treatment or other claimed departure from accepted standards of health care which proximately results in injury to the patient." (Emphasis added.) The key phrase is "health care provider." Subsection (A) of that same statute defines "health care provider" to include, among others, "a person, corporation, organization, facility or institution licensed or certified by this state to provide health care or professional services as a ... hospital, outpatient health care facility, ... nurse anesthetist or physician's assistant." None of these listed providers are physicians, and therefore they cannot form a physician-patient relationship, yet the legislature apparently believed all faced potential medical malpractice liability.

Accordingly, we believe the statute's broad definition of potential defendants provides significant evidence of the legislature's intent to impose liability beyond the context of a physician-patient relationship. As further support for our decision, we note numerous medical malpractice cases decided by New Mexico courts in which defendants other than only physicians are parties. *See Roberts*, 114 N.M. at 249, 837 P.2d at 443; *Blauwkamp*, 114 N.M. at 230, 836 P.2d at 1251; *Lopez v. Southwest Community Health Servs.*, 114 N.M. 2, 4, 833 P.2d 1183, 1185 (Ct.App.), *cert. denied*, 113 N.M. 690, 831 P.2d 989 (1992); *Lovelace Medical Ctr. v. Mendez*, 111 N.M. 336, 337, 805 P.2d 603, 604 (1991). These decisions clearly reveal that New Mexico courts recognize that a legal duty exists in medical malpractice actions against defendants other than physicians. Because Defendants did not exclude the possibility of liability for Pederson's actions, the summary judgment granted to Regents is reversed.

A recent decision dealing with this exact issue notes that "[w]e live in an age in which the drive for an increasingly productive workforce has led employers increasingly to require that employees subject their bodies (and minds) to inspection in order to obtain or maintain employment." *Green*, 910 F.2d at 295. This reality requires us to recognize that when an individual is obliged, as a condition of future or continued employment, to submit to a medical examination, that examination creates a duty between the examining health care provider and the examinee. Fortunately, we are not required to outline the exact contours of such a duty at this time, only to decide whether a duty of law exists.

Under the facts of this case, we believe the district court erred by holding no such duty exists. Plaintiff properly presented a question for the jury concerning whether LANL's periodic examinations resulted in Mr. Baer's reliance upon the x-rays which were taken during those physicals as a means by which the condition in his chest was intermittently reviewed. Among the numerous factual issues raised by this appeal and disputed by the parties, one critical jury question would be whether the duty owed to Mr. Baer was discharged in light of Defendants' referral of Mr. Baer to his private physician. Another might be whether the duty owed Mr. Baer by Regents' health care providers to use reasonable care during its examination was breached because, as reported by Defendants, "changes in federal funding, and new concerns about excessive radiation had caused the Occupational Medicine Group to delete chest x-rays from the battery of tests normally performed at physicals."

Given our holding and the vicarious liability issue raised by the facts of this case, a final issue must still be addressed as to whether Defendant Regents can potentially be held liable for the actions of Pederson.

### Vicarious Liability

The law in New Mexico is well settled that, under the doctrine of respondeat superior, an employer can be held vicariously liable for the negligent acts of an employee when committed during the course and scope of the employee's employment. *See Monett v. Dona Ana County Sheriff's Posse,* 114 N.M. 452, 456, 840 P.2d 599, 603 (Ct.App. 1992). However, Defendants claim that because Plaintiff did not name the employee as a named defendant in the underlying cause of action, the doctrine of respondeat superior cannot apply to the case. We disagree.

We believe it significant that Defendants have not sought dismissal of this claim for failure to join an indispensable party. *See* SCRA 1986, 1–019 (Repl.1992) (joinder of persons needed for just adjudication). Defendants merely assert, incorrectly, that this issue was not presented below. It is absolutely clear from the record that, after Plaintiff raised this issue, Defendants and the district court judge considered this theory of recovery in the proceedings below. This fact is especially obvious after considering the recording of the telephone conference call related to the filing of the amended order granting summary judgment.

In addition, although Plaintiff's underlying complaint does not mention physician's assistant Pederson by name or the theory of respondeat superior, it does clearly identify Defendant Regents based on their status of doing business in New Mexico and as operators of LANL. Moreover, the complaint clearly identifies that the alleged negligence was reportedly committed by Mr. Baer's private physician, as well as Dr. Williams and "other medical personnel at LANL." Although less than sweeping, these pleadings give adequate notice that one of Plaintiff's theories of the case against Defendant Regents is vicarious liability. *See Hall v. Budagher,* 76 N.M. 591, 592, 417 P.2d 71, 72 (1966) ("In considering whether a complaint states a claim upon which relief can be granted[,] we assume as true all facts well pleaded."), *overruled on other grounds by Lopez v. Maez,* 98 N.M. 625, 627, 651 P.2d 1269, 1271 (1982); *see also Phifer v. Herbert,* 115 N.M. 135, 138, 848 P.2d 5, 8 (Ct.App.1993) ("[W]e consider all of [p]laintiff's arguments concerning the facts she alleges she will be able to prove under the claim."). And finally, Defendants have not pointed out, and we know of no authority for the proposition that, in order to prove agency, the agent must be joined as a party to the action. *See DeBaca, Inc. v. Montoya,* 91 N.M. 419, 420, 575 P.2d 603, 604 (1978).

Therefore, given the fact that "[a]n entity or agency can only act through its employees," *Abalos v. Bernalillo County Dist. Attorney's Office,* 105 N.M. 554, 558, 734 P.2d 794, 798 (Ct.App.), *cert. quashed,* 106 N.M. 35, 738 P.2d 907 (1987), we conclude the complaint gives fair notice to Regents and should be decided on the merits. *See Malone v. Swift Fresh Meats Co.,* 91 N.M. 359, 362, 574 P.2d 283, 286 (1978) ("the principal function of pleadings is to give fair notice of the claim asserted"). We note that this Court recently reached the merits of an issue

in an analogous case on the basis that "[a]n issue is raised when there is some evidence in the record in dispute." *See Gillin v. Carrows Restaurants, Inc.,* 879 P.2d 121, 124 (N.M.Ct.App.1994). In that case, Judge Hartz specially concurred on the basis that "though [Plaintiff] did not alert the district court to the issue, the district court considered it. The issue was thereby preserved for appeal." *Id.* (Hartz, J., specially concurring). In this case, there is evidence in the record in dispute, and we are persuaded that the district court considered the issue of vicarious liability. Further, the complaint contains enough to support the legal theory argued on appeal. For all of these reasons, we conclude the issue of vicarious liability was preserved.

## CONCLUSION

For the reasons provided above, we reverse the district court's grant of summary judgment in favor of Regents, but affirm the grant of summary judgment in favor of Dr. Williams.

**IT IS SO ORDERED.**

MINZNER, C.J., and FLORES, J., concur.