686 A.2d 417

**Yuwaree PROMUBOL and Mongkol Sitachitt, Her Husband, Appellants,**

v.

**A. Khine HACKETT; Lowry Radiology Associates, Inc., and K.S. Sheety, P.C. t/d/b/a Professional X–Ray Associates.**

Superior Court of Pennsylvania.

Argued Oct. 8, 1996.

Filed Dec. 16, 1996.

Paul A. Hilko, Pittsburgh, for appellants.

Daniel P. Carroll, Jr., Pittsburgh, for Hackett, appellee.

Before POPOVICH, FORD ELLIOTT and HESTER, JJ.

HESTER, Judge:

Yuwaree Promubol and Mongkol Sitachitt, her husband, appeal from the order granting summary judgment in this medical malpractice action to appellees, A. Khine Hackett,

Lowry Radiology Associates, Inc., and K.S. Sheety, P.C. t/d/b/a Professional X–Ray Associates. We affirm.

The factual history of this unfortunate case centers upon the medical background of appellant Yuwaree Promubol. In February, 1993, appellant, who was plagued by a nagging cough for three weeks and was concerned that she may be suffering from pneumonia, ordered a chest x-ray.[1] The physician on duty who read the x-ray, noted a spot on appellee's left lung. Concerned, he compared the film to a previous chest x-ray taken in 1990 and noted that the spot, which was present in the 1990 chest x-ray, had grown in size. The physician ordered a CAT scan which confirmed the existence of a mass approximately $3 \times 1.5$ cm. Dr. Mariano performed a biopsy and consulted Dr. Tantisera, a chest and lung surgeon. Dr. Tantisera compared the 1993 chest film with the 1990 and a 1991 chest film and noted that a mass, present in the identical location to the 1993 film, had been reported as a "granuloma," in the 1991 film and was now two centimeters larger. On March 1, 1993, Dr. Tantisera performed a left upper lobectomy on appellant. The diagnosis of adenocarcinoma was confirmed. While the tumor was excised successfully, it had metastasized to the liver.

Appellant's past medical history reveals numerous prior x-rays. In 1985, appellant submitted to a chest x-ray required by her insurance company since she sought to purchase $100,-000.00 worth of additional life insurance to cover mortgages on her two homes. In 1988, prior to a hysterectomy, appellant's chest was x-rayed in conjunction with a battery of pre-operation testing. In 1990, appellant once again underwent a chest x-ray for insurance purposes. In 1991, appellant, seeking to increase her life insurance to $1,000,000.00, was required to undergo a physical by her carrier, Baltimore Life Insurance Company of Maryland. The insurance company provided appellant with a list of physicians from which she could choose. Appellant selected Dr. George Hunter who ordered a series of

---

1. Appellant Promubol, a Thai born and educated physician specializing in obstetrics and gynecology, ordered the chest x-ray after attempts to self-medicate with massive doses of antibiotics proved fruitless.

tests including a chest x-ray. No physical exam was performed in conjunction with any of the insurance increases.[2]

The 1991 chest film, which was ordered by Dr. George Hunter, was interpreted by Dr. A. Khine Hackett, a radiologist employed by Professional X–Ray Associates ("PXRA"). PXRA had contracted with Lowry Radiology Associates, the location where the x-ray was performed, to read the x-rays and issue reports. Dr. Hackett read the x-ray, prepared the report for Dr. Hunter and forwarded a copy of it to appellant Promubol.[3]

In her report, Dr. Hackett concluded that the study was normal with the exception of a possibly calcified granuloma in the left upper lobe of the lung. The report reflected Dr. Hackett's observations, but contained no advice or recommendation for follow-up. In her deposition, Dr. Hackett testified that she thought the lesion was benign. Deposition of A. Khine Hackett, 10/10/95, at 58–61. She explained that since appellant Promubol was of Southeast Asian descent, like herself, she expected that the granuloma was scarring due to

---

**2.** On or about the same date that Dr. Hackett read appellant's x-ray, appellant opted to have a mammogram. The mammogram was not performed in connection with the insurance increase, rather, appellant ordered it for herself. In her deposition, appellant testified that she looked at the chest x-ray and at the mammogram. While she saw no irregularity with the chest x-ray, she was concerned with the mammogram and thought that it revealed a mass in her right breast. Appellant consulted Dr. Kim, a radiologist who recommended an ultrasound of the breast to rule out breast cancer. *See* Deposition of Yuwaree Promubol, 5/30/95, at 29–33.

Appellant was diagnosed with a benign condition known as fibroadema of the breast and no further surgery was needed. She never questioned the x-ray report.

**3.** The record is silent as to the exact reason Dr. Hackett sent a copy of her report to appellant Promubol. In fact, Dr. Hackett had no specific recollection of sending a copy to appellant. Generally, it is not the practice of PXRA to issue reports. *See* Deposition of A. Khine Hackett, 10/10/95, at 43–5.

In their brief, appellees offer that since both physicians were acquaintances and on staff together at Jeannette Hospital, Dr. Hackett sent a copy of the radiology report as a professional courtesy.

Appellant never had received copies of the reports which were generated in conjunction with insurance physicals prior to 1991.

long-term tuberculosis exposure.[4]

In this timely appeal, one issue is presented for review. Appellants request that we determine whether the trial court erred when it determined that no physician-patient relationship existed between appellant Promubol and appellee Hackett and entered the contested order granting summary judgment in favor of appellees.

Preliminarily, we note that our scope of review from a grant of summary judgment is plenary. *See Schriver v. Mazziotti*, 432 Pa.Super. 276, 638 A.2d 224 (1994); *Mellon v. Barre–National Drug Co.*, 431 Pa.Super. 175, 636 A.2d 187 (1993); *American States Insurance Co. v. Maryland Casualty Co.*, 427 Pa. Super. 170, 628 A.2d 880 (1993).

In reviewing an order granting a motion for summary judgment, we must view the record in the light most favorable to the non-moving party. *Dorohovich v. West American Insurance Co.*, 403 Pa.Super. 412, 589 A.2d 252 (1991). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991). Moreover, in summary judgment proceedings, it is not the court's function to determine the facts, but only to determine if an issue of material fact exists. *Godlewski v. Pars Manufacturing Co.*, 408 Pa.Super. 425, 597 A.2d 106 (1991). Summary judgment should only be granted in those cases which are free and clear from doubt. *Spain v. Vicente*, 315 Pa.Super. 135, 461 A.2d 833 (1983).

Summary judgment is proper only where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the court's conclusion that no genuine issue of material fact exists and [that] the moving party is entitled to judgment as a matter of law.

---

4. Appellant acknowledged that being of southeast Asian descent, where lung infections are common, the risk for post-infection granulation or scarring was great. Appellant admitted that she, herself, suffered from bronchitis on more than one occasion and thought that the calcification was consistent with a prior infection. Deposition of Yuwaree Promubol, 5/30/95, at 43.

Pa.R.C.P. 1035(b); *Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989).

*American States Insurance Co. v. Maryland Casualty Co., supra,* 427 Pa.Super. at 180–81, 628 A.2d at 885–86. Furthermore, we will not overturn a trial court's grant of summary judgment in the absence of either an error of law or a clear abuse of discretion. *See Mellon v. Barre–National Drug Co., supra.*

*Acme Markets v. Federal Armored Express,* 437 Pa.Super. 41, 45, 648 A.2d 1218, 1220 (1994). Utilizing these principles, we consider the appropriateness of the challenged summary judgment grant.

Appellants acknowledge that appellant Promubol's 1991 chest x-ray was performed pursuant to an insurance physical which was required before her requested increase in coverage would be permitted. Appellants do not dispute the fact that appellee Hackett evaluated appellant Promubol's chest x-ray due to the contract with Dr. Hackett's employer, Lowry Radiology Associates, and Dr. Promubol's insurer. While appellants accept that generally, a physician-patient relationship is not created where a physician examines a patient at the behest of an insurance company, they assert that the facts herein are distinguishable. Specifically, appellants contend that a physician-patient relationship was created herein when appellee Hackett sent appellant Promubol a copy of the x-ray report which was prepared for Dr. Hunter, the referring physician from Lowry Radiology Associates, who then notified the insurance company of the results.

Appellants assert that the trial court erred when it did not adopt appellants' analysis and granted summary judgment. Appellants seek to distinguish the long line of cases which hold that no physician-patient relationship exists where a patient is examined by a physician at the request of a third party. Appellants argue that by sending a copy of the x-ray report to appellant Promubol, Dr. Hackett was gratuitously rendering negligent advice and should be held accountable. The language appellants emphasize may be traced to *Craddock v. Gross,* 350 Pa.Super. 575, 504 A.2d 1300 (1986) (no theory of

negligence may be advanced where plaintiff neither has employed defendant nor sought or received advice from defendant).

■ In order to prevail on a negligence claim, plaintiffs must prove the existence of four elements: a duty which requires the actor to perform according to accepted standards of care; a breach by the actor of the acceptable standards; causation between the conduct and the injury; and actual damages. *Casey v. Geiger,* 346 Pa.Super. 279, 499 A.2d 606 (1985).

As stated *supra,* Pennsylvania courts have held that a patient may not succeed on an action in negligence against a physician where a third party has sponsored the medical examination of the patient. In accord with the principles to which we adhere, there is no relationship giving rise to a duty in these circumstances. The theory behind this simple principle follows.

> The term malpractice denotes a breach of duty owed by one in rendering professional services to a person who has contracted for such services; in physician malpractice cases, the duty owed by the physician arises from the physician-patient relationship. No such relationship existed in the case at bar ... Plaintiff did not employ the defendant nor did [s]he seek or receive medical advice or treatment. Under such circumstances, the defendant did not owe plaintiff any duty arising from a physician-patient relationship.

*Tomko v. Marks,* 412 Pa.Super. 54, 58, 602 A.2d 890, 892 (1992), quoting *Craddock v. Gross,* 350 Pa.Super. *supra* at 579, 504 A.2d *supra* at 1302.[5]

It is undisputed that the 1991 chest x-ray report was prepared by Dr. Hackett for and directed to Lowry Radiology Associates at the behest of appellant Promubol in order to

5. We note that while in *Tomko* we urged that reports should be sent to patients who are subjected to third-party sponsored testing so that they might review them if they so chose, we did not conclude that merely sending a copy of a report would establish a physician-patient relationship.

satisfy the requirements of Baltimore Life. The x-ray report noted the following:

> Two views of the chest show normal heart size. No evidence of pneumonia. there is a questionable, small calcified granuloma in the lingular segment of the left upper lobe, partially superimposed over the posterior aspect of the left 9th rib. The film obtained is underexposed and obscured detail.

> IMPRESSION: NORMAL HEART AND LUNG, EXCEPT FOR A POSSIBLE CALCIFIED GRANULOMA IN THE LINGULAR SEGMENT OF THE LEFT UPPER LOBE.

X-ray report, 8/2/91, Defendant's exhibit "A" of brief in support of motion for summary judgment, filed 2/1/96.

While appellants contend that by forwarding this document to Dr. Promubol, Dr. Hackett provided advice and initiated a physician-patient relationship, appellants cite to no case precedent which supports their contention that a notification of a report constitutes advice. Therefore, we have consulted Black's Law Dictionary for clarification of the terms so as to decipher whether they properly may be used interchangeably. The obvious distinctions between advice and notification are apparent and follow. "ADVICE. View; ... an opinion expressed as to wisdom of future conduct." Black's Law Dictionary 74 (Revised 4th ed. 1968). "NOTIFY. To give notice to; to inform by words or writing, in person or by message, or by any signs which are understood; to make known." Black's Law Dictionary 1211–1212 (Revised 4th ed. 1968).

It is clear that the report does not *advise* appellant. It was neither prepared for appellant nor directed to appellant, and it did not provide recommendations for follow-up. There were no personal notations, whatsoever on the report. Clearly, it represented a gratuitous notification that the information contained therein was being sent to the insurance carrier. Since the exam was reported as normal, sending a copy of the report doubled as notification that appellant Promubol's sought-after insurance increase would likely be granted. Ironically, the

fact that Dr. Hackett had copied it to appellant presented an opportunity for appellant to act upon the ambiguous results. Clearly, in the past when appellant was concerned or suspicious, she took it upon herself to become involved in her own medical treatment. Unfortunately, not even appellant, herself a physician, who was aware of her own past medical history was alarmed by this report.

Based upon the facts and evidence as presented to the trial court, the trial court concluded,

[T]he Plaintiff did not employ the Defendant nor did Plaintiff seek or receive medical advice or treatment. It is uncontroverted that the x-ray reading performed by Dr. Hackett was accomplished because the Plaintiff's life insurance carrier requested an examination be done. Notwithstanding the fact that the results of the examination were made available to the Plaintiff, the nexus created by the physician/patient relationship and the privity resulting therefrom is not established.

Trial court opinion, 5/17/96, at 3. Accordingly, it granted summary judgment. Since it does not appear that the trial court erred in its analysis of current law or abused its discretion in entering this order, we find no error.

Order affirmed.

FORD ELLIOTT, J., concurs in the result.