No. 97-255

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


DIANA L. WEBB,

Plaintiff and Appellant,

v.

T.D., D.C.; R.K.S., M.D.; and C.H.A., M.D.,

Defendants and Respondents.


APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell C. Fagg, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

John M. Morrison (argued), Meloy & Morrison, Helena, Montana

For Respondent:

Richard F. Cebull (argued) and Lisa A. Rodeghiero; Brown,
Gerbase, Cebull, Fulton, Harman & Ross; Billings, Montana
(for R.K.S., M.D.)


Heard:  November 13, 1997

Submitted: November 20, 1997

Decided: December 30, 1997
Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The plaintiff, Diana L. Webb, filed a complaint in the District Court for the Thirteenth Judicial District in Yellowstone County in which she alleged that she was injured as a result of a negligent orthopedic examination performed by Robert K. Snider, M.D.  Dr. Snider had examined her at the request of her employer's workers' compensation insurance carrier.  The District Court granted summary judgment to Dr. Snider on the basis that he owed claimant no duty because he had no physician-patient relationship with her.  Webb appeals from that order and judgment.  We reverse the judgment of the District Court.

The issue on appeal is whether a physician who performs a medical examination of an individual at the request of a third party has a duty of care to the examinee and, if so, what is the scope of that duty.

FACTUAL BACKGROUND

The following facts were before the District Court by deposition or affidavit. Because Webb's claim was resolved by summary judgment, we set forth only those facts most favorable to her claim.

Diana Webb suffered a work-related injury to her lower back in 1986.  From April through August of that year, she received treatment on one occasion from a physical therapist and periodically from a chiropractor for pain relief.  The only medical doctor who examined her back was Robert K. Snider, M.D., an orthopedic surgeon, to whom she was referred by the State Compensation Insurance Fund.  She saw Dr. Snider on October 7, 1986. He examined her and had her undergo a CAT scan of her back to help determine whether she had herniated an intervertebral disc.

Following Dr. Snider's examination and review of the CAT scan film, he wrote her the following letter on October 8, 1986:

Mrs. Edward Webb
Box 45
Belfry, MT 59008

Dear Diana:

I have reviewed the CAT scan, and it looks excellent.  There is no evidence of a ruptured disc.  I think that the problems that you are having are of a back sprain, and I don't feel that any surgical treatment will be necessary.

I indicated to workers' compensation that I feel that you can work, and I gave them an impairment rating of 2 percent applied to the whole person.

If you feel that you cannot return to your original job, then you need to discuss this with workers' compensation.

Sincerely,

Robert K. Snider, M.D.

According to Webb's testimony, because Dr. Snider was the only physician who had actually examined her, she relied on his advice and sought no further treatment for

her back injury.  She eventually returned to an occupation in which she performed heavy labor, severely herniated an intervertebral disc in her lower back, and has significant physical limitations as a result of that additional back injury.

Lawrence Guinney, M.D., is an orthopedic surgeon who, at Webb's request, reviewed her medical records, including those prepared by Dr. Snider, and the CAT scan done at Dr. Snider's request in 1986.  It was his opinion that, contrary to the advice of Dr. Snider, that film showed an abnormal bulging disc at the level between Webb's fifth lumbar vertebra and first sacral vertebra and that Dr. Snider departed from the accepted standard of care for orthopedic surgeons by failing to note the abnormality.  It was his opinion that as a result of Dr. Snider's misdiagnosis in 1986 and his failure to limit Webb's work-related activity, she suffered a herniation of the same disc in 1989 from which she suffered nerve root compression.  Dr. Guinney concluded that the pain and dysesthesia, from which she now suffers, is a result of the prolonged nerve root compression caused by the 1989 herniation, and that if her condition had been accurately diagnosed in 1986 and her activities limited, it is more likely than not that the 1989 herniation and nerve root compression would not have occurred.

Dr. Snider moved for summary judgment.  In support of his motion, he stated by affidavit that he saw Webb on one occasion on October 7, 1986, at the request of the State Compensation Insurance Fund to evaluate the nature and extent of her disease or injury and whether she could return to work. He stated that he was not retained to provide medical treatment and that he provided none.  His findings were reported to the State Fund and the fee for his services was paid by the State Fund.

Dr. Snider contended that he was entitled to summary judgment for two reasons: (1) Webb's claim was barred by the statute of limitations; and (2) he owed Webb no duty because he had no doctor-patient relationship with her.

On February 3, 1995, the District Court granted summary judgment to Dr. Snider based on the statute of repose found at õ 27-2-205, MCA.  That order was appealed to this Court, which reversed the District Court on February 20, 1996, and remanded to the District Court for further proceedings.  See Webb v. R.K.S., M.D. (1996), 275 Mont. 243, 912 P.2d 202.  On January 21, 1997, the District Court granted a second motion for summary judgment in favor of Dr. Snider based on its conclusion that an independent medical exam (i.e., an exam performed at the request of a third party) does not give rise to a doctor-patient relationship, and that absent such a relationship an examining physician has no duty to the examinee to exercise reasonable care.

## DISCUSSION

Does a physician who performs a medical examination of an individual at the

request of a third party have a duty of care to the examinee and, if so, what is the scope
of that duty?

This is an appeal from an order dismissing Webb's claim by summary judgment. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  See Rule 56(c), M.R. Civ.P.
Our review of district court orders granting summary judgment is plenary.  See State Farm v. Powell (1995), 274 Mont. 92, 95, 906 P.2d 198, 200.

The District Court granted Dr. Snider's motion for summary judgment based on its conclusion that he owed no duty to Webb because she was not his patient.  The question of whether a legal duty is owed by one person to another, as well as the scope
of any such duty, are questions of law.  See Nautilus Ins. Co. v. First Nat'l Ins., Inc.
(1992), 254 Mont. 296, 299, 837 P.2d 409, 411.

On appeal, Webb contends that doctors in Montana have a duty to exercise that degree of skill and learning ordinarily exercised by other doctors in the same speciality
under like circumstances, and failure to do so is negligence.  She cites our decision in
Aasheim v. Humberger (1985), 215 Mont. 127, 695 P.2d 824.  She contends that she submitted evidence that Dr. Snider negligently failed to diagnose her condition and that
she suffered further damage as a result of his negligence and, therefore, that the District
Court erred by dismissing her claim by summary judgment.

Dr. Snider responds that although he has a duty to exercise reasonable care, based
on the standards of his profession, when examining, diagnosing, or treating a patient, that
duty is based on, and limited to, the doctor-patient relationship.  He contends that because
he had no doctor-patient relationship with Webb, he owed her no duty as a matter of law.
Although Dr. Snider concedes that there are no prior decisions to that effect in Montana,
he relies on the following decisions from other jurisdictions: Hafner v. Beck (Ariz. App.
1995), 916 P.2d 1105; Keene v. Wiggins (Cal. Ct. App. 1977) 138 Cal. Rptr. 3; Peace v. Weisman (Ga. App. 1988), 368 S.E.2d 319; Rogers v. Horvath (Mich. 1975), 237 N.W.2d 595; Henkemeyer v. Boxall (Minn. Ct. App. 1991), 465 N.W.2d 437; LoDico v. Caputi (N.Y. App. Div. 1987) 517 N.Y.S.2d 640; Promubol v. Hackett (Pa. Super. 1996), 686 A.2d 417; Tomko v. Marks (Pa. App. 1992), 602 A.2d 890; Craddock v. Gross (Pa. Super. 1986), 504 A.2d 1300; Wilson v. Winsett (Tex. App. 1992), 828 S.W.2d 231; Johnston v. Sibley (Tex. Civ. App. 1977), 558 S.W.2d 135.  The District Court agreed, and on that basis, granted Dr. Snider's motion for summary judgment.

Webb replies that this case is distinguishable from the authorities cited by Dr. Snider and  relied on by the District Court because in this case Dr. Snider undertook to
advise Webb regarding her condition, and thereby, assumed a duty to her to exercise reasonable care.  She contends that the authorities cited by Dr. Snider and relied

on by
the District Court are inapplicable to the facts in this case because in none of those cases
was advice directly provided by the examining physician to the person who had been examined.  Webb contends that the more persuasive authorities are the following: Daly v. United States (9th Cir. 1991), 946 F.2d 1467; Green v. Walker (5th Cir. 1990), 910 F.2d 291; Betesh v. United States (1974), 400 F. Supp. 238; Hoover v. Williamson (Md. 1964), 203 A.2d 861; Cleghorn v. Hess (Nev. 1993), 853 P.2d 1260; Edwards v. Lamb (N.H. 1899), 45 A. 480; Baer v. Regents of Univ. of California (N.M. App. 1994), 844 P.2d 841; Ferguson v. Wolkin (N.Y. 1986), 499 N.Y.S.2d 356; Twitchell v. MacKay (N.Y. App. Div. 1980), 434 N.Y.S.2d 516; Armstrong v. Morgan (Tex. App. 1977), 545 S.W.2d 45.

We agree that the authorities cited by Dr. Snider and relied on by the District Court are not applicable to the facts in this case.  All of them involve independent medical examinations at the request of a workers' compensation insurance carrier, state
agency, or employer, and all involve allegations that the examination was done negligently, causing some damage to the plaintiff.  However, none involved a situation
in which the defendant physician was accused of negligently diagnosing a plaintiff's condition and communicating his erroneous conclusions directly to the patient.  The closest to a case on point is Promubol where the defendant physician interpreted the plaintiff's x-ray film, sent a report to the plaintiff's insurance company, and sent a copy
to the plaintiff.  However, critical to that court's decision in favor of the defendant doctor
was its conclusion that he had not, in fact, given advice to the plaintiff.  That court gave
the following explanation for its decision:

It is clear that the report does not advise appellant.  It was neither prepared for appellant nor directed to appellant, and it did not provide recommendations for follow-up.  There were no personal notations, whatsoever on the report.  Clearly, it represented a gratuitous notification that the information contained therein was being sent to the insurance carrier. Since the exam was reported as normal, sending a copy of the report doubled as notification that appellant Promubol's sought-after insurance increase would likely be granted.

Promubol v. Hackett (Pa. Super. 1996), 686 A.2d 417, 420.

On the other hand, in Hoover, the Maryland Court of Appeals considered a physician's duty under circumstances similar to those in this case.  In that case, General
Electric Company required annual x-ray examinations of the chests of certain employees
due to the effects of silica dust to which they were exposed.  One of the employees was
the plaintiff, Willard Hoover.  The examinations were performed under the direction of
the defendant, Dr. C. Vernon Williamson.  The plaintiff alleged that following his annual
examination, Dr. Williamson advised him that he had "a little infection in the lungs,"

when, in fact, the examination clearly revealed that he had silicosis. However, his complaint was dismissed based on lack of a physician-patient relationship since Dr. Williamson had been retained and paid by his employer. The trial court held that Williamson's duty was to the company and not to Hoover. The Maryland Appellate Court acknowledged that ordinarily recovery for malpractice is limited to situations which involve the relationship of a doctor and patient, but reversed the defendant's dismissal based on the following exception:

> There is, however, a broader, a more fundamental rule of long standing under which a physician may incur a tort obligation which is nonconsensual and independent of contract. This is the general rule that one who assumes to act even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all. Restatement, Torts, Sec. 325, says the law is that one who gratuitously undertakes to render services which he should recognize as necessary to another's bodily safety, and leads the other in reasonable reliance on the services to refrain from taking other protective steps, or to enter on a dangerous course of conduct, '. . . is subject to liability to the other for bodily harm resulting from the actor's failure to exercise reasonable care to carry out his undertaking.' See also 2 Harper and James, The Law of Torts, Sect. 18.6.

Hoover v. Williamson (Md. 1964), 203 A.2d 861, 863.

That court held that even if the defendant had no duty to the plaintiff to begin with, he assumed a duty when he made affirmative representations to the plaintiff regarding his condition. Hoover is also relied on in Betesh v. United States (1974), 400 F. Supp. 238, 245-46, for the principle that a physician performing an independent medical examination can mislead a patient and, therefore, breach a duty to that patient by withholding information, as well as by affirmatively misrepresenting a patient's condition.

Dr. Snider contends that if we adopt the plaintiff's theory and allow an exception to the physician-patient requirement in only those situations where a physician makes affirmative representations to the examinee, then in those situations where the examinee does in fact suffer from some physical ailment about which he or she should be notified, i.e., the presence of a potentially fatal tumor, then it would be in the physician's best interest not to notify the examinee, and that that would not be in the public's best interest.

We agree. Therefore, while we agree with the decision of the Maryland Court of Appeals in Hoover that a physician who performs an independent medical examination has a duty to exercise reasonable care when he or she communicates the results of that examination to the examinee, we conclude that the scope of the duty to the examinee is not limited to those situations in which diagnoses are negligently made and communicated

to the person being examined.

Based on the statutory scheme which defines the duty of every person in Montana to exercise  ordinary care and skill to avoid injury to others (§ 27-1-701, MCA), we find the decision of the Fifth Circuit Court of Appeals in Green v. Walker, M.D.  (5th Cir. 1990), 910 F.2d 291, persuasive.  In Green, the decedent's employer required its employees to undergo an annual physical examination and contracted with the defendant physician to conduct those examinations.  The defendant reported that all of Green's test results were normal and that he was employable without restriction.  Approximately one year later, he was diagnosed with lung cancer from which he ultimately died.  Prior to his death, he brought an action against the examining physician based on his contention that the physician negligently failed to diagnose his condition and that if he had, his chances of survival would have been greater.  The district court, however, granted summary judgment in favor of the physician on the basis that no physician-patient relationship existed and, therefore, that the defendant had no duty to Green. The issue on appeal to the Fifth Circuit Court was whether, under Louisiana law,  the defendant had a duty to the examinee to perform the examination with due care, and to report his findings, particularly any finding which appeared to pose a threat to the physical or mental health of the examinee.  The Fifth Circuit Court held that the defendant had such a duty.  That court acknowledged that the traditional principle of law regarding liability for malpractice depends on a physician-patient relationship.  See Green, 910 F.2d at 296.

That court based its decision on Louisiana statutory law, in spite of a decision from Louisiana's Court of Appeals which seemed to require the opposite result.  See Thomas v. Kenton (La. App. 1982), 425 So. 2d 396.  It noted that in Louisiana "the Erie obligation is to the [Civil] Code, the 'solemn expression of legislative will.'" Green, 910 F.2d at 294 (quoting Shelp v. National Surety Corp. (5th Cir. 1964), cert. denied (1964), 379 U.S. 945, 85 S. Ct. 439, 13 L. Ed. 2d 543).  The statutory provision it relied on provides:  "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code art. 2315.  That court concluded that Louisiana's Civil Code "permits the articulation of a duty of care that would protect physical examinees, if they are to be deemed other than 'patients,'  a position we do not here concede."  Green, 910 F.2d at 295.  It provided the following rationale and conclusion:

We live in an age in which the drive for an increasingly productive workforce has led employers increasingly to require that employees subject their bodies (and minds) to inspection in order to obtain or maintain

employment. See Rothstein, Employee Selection Based on Susceptibility to Occupational Illness, 81 Mich. L. Rev. 1379 (1983) (common procedures include blood tests, urinalysis, pulmonary function tests, and x-rays). In placing oneself in the hands of a person held out to the world as skilled in a medical profession, albeit at the request of one's employer, one justifiably has the reasonable expectation that the expert will warn of "any incidental dangers of which he is cognizant due to his peculiar knowledge of his specialization." American Mfrs. Mut. Ins. Co. v. United Gas Corp., 159 So. 2d 592, 595 (La. App. 1964).

We therefore now hold that when an individual is required, as a condition of future or continued employment, to submit to a medical examination, that examination creates a relationship between the examining physician and the examinee, at least to the extent of the tests conducted. This relationship imposes upon the examining physician a duty to conduct the requested tests and diagnose the results thereof, exercising the level of care consistent with the doctor's professional training and expertise, and to take reasonable steps to make information available timely to the examinee of any findings that pose an imminent danger to the examinee's physical or mental well-being. To impose a duty upon the doctor who performs such tests to do so in accordance with the degree of care expected of his/her profession for the benefit of the employee-examinee, as well as the employer, is fully consistent with the very essence of Civil Code article 2315.

Green, 910 F.2d at 295-96 (footnote omitted).

Green has been followed or cited with approval in Daly v. United States (9th Cir. 1991), 946 F.2d 1467; Cleghorn v. Hess (Nev. 1993), 853 P.2d 1260, and Baer v. Regents of Univ. of California (N.M. App. 1994), 884 P.2d 841.

Similarly, the Montana Code Annotated provides as follows:

Except as otherwise provided by law, everyone is responsible not only for the results of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person except so far as the latter has willfully or by want of ordinary care brought the injury upon himself.

Section 27-1-701, MCA.

Based on õ 27-1-701, MCA, we likewise conclude that it is consistent with statutory law in Montana to impose a duty on physicians who perform examinations of an employee, insured, or other person at the request of a third party to exercise the level of care required by the examiner's professional training and experience and to make information regarding the results of that examination available to the examinee if the physician's findings disclose an imminent danger to the examinee's physical or mental well-being.

We do not, by this opinion, conclude that physicians retained by third parties who perform independent medical examinations have the same duty of care that a physician has to his or her own patient. The scope of the duty attendant to an independent medical

examination must necessarily be developed on a case-by-case basis.  We agree with the observation of the California Court of Appeals in Keene v. Wiggins (Cal. Ct. App. 1977),
138 Cal. Rptr. 3, when it stated that:
This does not suggest, however, a doctor is required to exercise the same
degree of skill toward every person he sees. The duty he owes to each
varies with the relationship of the parties, the foreseeability of injury or
harm that may be expected to flow from his conduct, and the reliance which
the person may reasonably be expected to place on the opinion received.
A case-by-case approach is required.

Keene, 138 Cal. Rptr. at 6.
      What we do hold, in this case, is that a health care provider in Montana who is retained by a third party to do an independent medical examination has the following duties:
      1.    To exercise ordinary care to discover those conditions which pose an imminent danger to the examinee's physical or mental well-being and take reasonable steps to communicate to the examinee the presence of any such condition; and
      2.    To exercise ordinary care to assure that when he or she advises an examinee about her condition following an independent examination, the advice comports with the
standard of care for that health care provider's profession.
      For these reasons, we conclude that the District Court erred when it held that the
defendant, Robert K. Snider, M.D., had no duty to the plaintiff, Diana L. Webb, to exercise ordinary care under the circumstances alleged in this case.  We reverse the order
and judgment of the District Court and remand to the District Court for further proceedings consistent with this opinion.

                        /S/   TERRY N. TRIEWEILER


We Concur:

/S/  J. A.  TURNAGE

/S/  JIM REGNIER

/S/  JAMES C. NELSON

/S/  WILLIAM E. HUNT, SR.

Justice W. William Leaphart, specially concurring.
      I concur in the result reached by the Court, however, I would have only answered the question posed by the appellant Webb.  Webb phrased the issue on appeal as follows:
"Does a physician who undertakes to advise a patient about her condition following an independent medical examination have an obligation to exercise reasonable care in doing
so?"
      In responding to  the issue framed by Webb, I would hold that an IME doctor who

undertakes to advise a patient about her condition following an independent medical examination has an obligation to exercise reasonable care in so advising her.

Unlike the majority, I would not have addressed the broader questions of whether an IME doctor who examines a person must exercise ordinary care to discover mental or physical conditions and to take reasonable steps to communicate the presence of such conditions to the examinee.  Those are questions which were not posed by the appellant
and are outside the scope of the facts of this appeal.  While I do not necessarily disagree
with the Courtþs analysis of those issues, they are issues for another day, another appeal.

/S/  W. WILLIAM LEAPHART

Justice Karla M. Gray joins in the foregoing special concurrence.

/S/  KARLA M. GRAY