STATE of Minnesota, Respondent,

v.

Stephen Andrew HODGSON, Appellant.

No. C5–93–222.

Supreme Court of Minnesota.

Feb. 11, 1994.

John Stuart, State Public Defender, Evan W. Jones, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Paul R. Scoggin, Asst. County Atty., Minneapolis, for respondent.

KEITH, Chief Justice.

Defendant, Stephen Andrew Hodgson, was found guilty by a district court jury of two counts of first-degree (premeditated) murder and was sentenced by the trial court to two consecutive terms of life in prison. On this direct appeal from judgment of conviction he contends (1) his convictions should be reversed outright because the evidence that he killed the two victims was legally insufficient and (2) failing that, he should be given a new trial because (a) he was denied a fair trial by certain evidentiary rulings by the trial court and by his attorney's failure to represent him effectively and (b) there is newly-discovered evidence entitling him to a new trial. We affirm.

1. Defendant's first contention is that he is entitled to an outright reversal of his convictions because the state failed to prove that he was the person who killed the victims. The victims in this case were 67–year–old Raymond Rice and his 19–year–old grandson, Aaron Rice, who was living with his grandparents. On the night in question, October 16, 1991, the grandmother, Lillian Rice, was working as a live-in nurse at another residence. On the morning of October 17, 1991, she was unable to get anything but a busy signal when she called home. Suspecting that the receiver was off the hook, she asked her daughter Judy, Aaron's mother, to go by the house on her way to work and to replace the receiver on the hook. When Judy went to the home she discovered in a bedroom the bodies of her father and her son, both of whom had been brutally stabbed to death.

It was the state's theory that the assailant had attacked the elder Rice first, stabbing him in excess of 60 times, eventually severing two major veins in his throat, and that the assailant then had attacked and stabbed Aaron in the back when he entered the room after being awakened by the assault on his grandfather. It was clear a tremendous struggle had taken place in the bedroom.

Suspicion immediately focused on defendant, because defendant had been bitter and

had made express threats to kill family members following the termination of his intimate relationship with Jan Braunegger, Raymond's daughter and Aaron's Aunt. Moreover, the killer had written Jan's name in blood on the floor next to Raymond's head.

Police arrested defendant within a few hours after the discovery of the bodies. Defendant had two fresh cuts on his face, bruises and cuts on his forearms and a large mark on the back of his left arm later identified as a fresh human bite mark. Warranted searches of his residence resulted in the discovery of damp, blood-stained clothing, broken eyewear, and a wrist watch that was missing a watch-strap pin. Police analyzing the murder scene found a watch pin that fit defendant's watch. Expert analysis later linked this pin to defendant's watch. Further, blood found on the watch was consistent with having come from Raymond Rice and inconsistent with having come from defendant. A warranted search of defendant's car resulted in the discovery of more blood stains. This blood was consistent with having come from a mixture of defendant's blood and the victims' blood.

The state was able to establish that at around 11:00 p.m. on October 16, when defendant was last seen before the murders, he had no visible cuts or bruises on him and his glasses and watch were intact. Jan Braunegger and her friend, Scott Clausen, testified that defendant called her home at around 2:00 a.m. leaving a message on the answering machine indicating an urgent desire to speak with her. Defendant's roommates testified that when defendant returned to his place later that morning, he took a long shower, followed, after an interval of 5 minutes, by a shorter, second shower.

Looking, as we must, at the evidence in the light most favorable to the guilty verdicts, we conclude that the state's evidence identifying defendant as the murderer was sufficient to support the guilty verdicts.

2. (a) The state public defender argues on defendant's behalf that defendant was denied a fair trial by certain evidentiary rulings of the trial court.

(i) First, it is argued that the trial court improperly allowed the state, at the beginning of the trial during the emotional testimony of Aaron's mother, to play a 45-second video tape of Aaron playing basketball for his high school basketball team. Defendant contends that the potential of this evidence for creating undue prejudice and arousing the emotions of the jurors outweighed the evidence's probative value and that the trial court should have excluded the evidence. We reject this contention.

In a prosecution for a homicide the state is entitled to briefly provide the jurors with a minimal amount of information identifying the victim so that the jury knows that the victim was not a number but a distinct person. The prosecutor, however, may not use this as a way of avoiding the rules relating to character evidence—*see* Minn.R.Evid. 404—or in an attempt to get the jury to decide the case on the basis of passion or prejudice. Justice Yetka put it well in *State v. Graham,* 371 N.W.2d 204, 207 (Minn.1985):

> While it is true that the quality or personal details of the victim's life are not strictly relevant to the issue of who murdered the victim, it would seem to tie unduly the hands of the prosecutor to prohibit any mention of the victim's life. The victim was not just bones and sinews covered with flesh, but was imbued with the spark of life. The prosecution has some leeway to show that spark and present the victim as a human being as long as it is not an "attempt to evoke any undue sympathy or inflame the jury's passions." *State v. Plan,* 316 N.W.2d 727, 728 (Minn.1982).

Other relevant decisions of this court include: *State v. Duke,* 335 N.W.2d 511, 514 (Minn.1983) (prosecutor in homicide case did not commit misconduct in eliciting evidence that the victim had children; "prosecutor did not try to evoke sympathy on this point or to stir up the passions of the jury against defendant" and "the defense took advantage of every available opportunity to run down the victim and show that she was a bad mother while at the same time showing that defendant had been like a father to the children"); *State v. Lee,* 322 N.W.2d 197, 199 (Minn. 1982) (trial court in homicide case arising

from stabbing a fellow inmate at prison did not err in allowing prosecutor to present evidence "that the victim had been honorably discharged from the military, had earned college credits, and was a father"); *State v. Plan,* 316 N.W.2d 727, 728 (Minn.1982) (trial court in homicide case did not err in denying motion to exclude evidence that the victim was son of a police officer; "prosecutor did not attempt to evoke any undue sympathy or inflame the jury's passions on this basis").

In this case the defense theory was that Jan Braunegger had killed her father and nephew and framed defendant. The state was entitled to provide the jury with a brief amount of information identifying the victims, so long as it did not try to create undue sympathy or arouse the passions and prejudices of the jurors. Moreover, the 45–second video tape of Aaron playing basketball was relevant evidence bearing on defendant's theory, since it showed that the victim was tall, well-built, agile and athletic, *i.e.,* not someone that a smaller, less agile person (such as Jan Braunegger) likely would be able to stab to death in a struggle over the knife without sustaining so much as a scratch herself.

■ (ii) Defendant argues that the trial court erred in admitting expert testimony connecting the bite mark on defendant's arm with Raymond Rice. The expert, Dr. Ann Norrlander, is a board-certified forensic odontologist, that is, a dentist specializing in collecting and analyzing evidence of teeth markings in criminal and other matters. She testified, without objection, that the mark on defendant's arm was a human bite mark, that it was more than a couple hours old and less than several days old. She testified further that there were several similarities between the bite mark and the pattern of Raymond Rice's teeth, as revealed by known molds of his mouth. Defense counsel objected to a question regarding Dr. Norrlander's opinion as to whether the bite mark and the teeth pattern matched and Dr. Norrlander did not state her opinion.

Defendant argues that bite-mark analysis is not widely accepted within the scientific community and therefore does not meet the so-called *Frye* test, which this court followed in *State v. Schwartz,* 447 N.W.2d 422, 424 (Minn.1989), for admission of novel scientific evidence. We note that recently the United States Supreme Court, in *Daubert v. Merrell Dow Pharmaceutical, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), held that the Rules of Evidence supersede the *Frye* or general acceptance test for the admission of novel scientific evidence. *Daubert,* —— U.S. at ——, 113 S.Ct. at 2794. We need not address the issue of what impact *Daubert* should or will have in Minnesota. Suffice it to say, we are satisfied that basic bite-mark analysis by a recognized expert is not a novel or emerging type of scientific evidence. Like fingerprint comparisons, bite mark comparisons by an expert such as a Dr. Norrlander "are routinely used to prove that a particular person was present at a particular place or did a specific act." C. Herasim-chuk, *A Practical Guide to the Admissibility of Novel Expert Evidence in Criminal Trials Under Federal Rule 702,* 22 St. Mary's L.J. 181, 210–11 and n. 122 (1990). *See also* Annot., 77 ALR 3rd. 1122 (1977) and (1993 Supp.).

■ (iii) Defendant further contends that the trial court erred in admitting expert opinion testimony by Wally Sorum of the Minnesota Bureau of Criminal Apprehension linking the metal pin found at the murder scene with defendant's watch, which was missing its watch pin. Sorum testified specifically that material scraped from the watch pin was consistent with the material scraped from a channel on defendant's watch where the pin fit. Defendant complains about the foundation for Sorum's testimony. It appears that the state was able to establish a complete chain of custody. However, we see no need to address this issue in any detail because Sorum's testimony was not a key part of the evidence regarding the watch and the watch pin. The significant facts were that a watch pin was found at the murder scene, that defendant's watch had blood on it and was missing a pin, and that the pin fit defendant's watch. There is no reasonable likelihood that without Sorum's testimony the jury would have concluded that these facts were all coincidental.

(iv) The final evidentiary issue raised by the state public defender relates to the admission of expert opinion testimony by Dr. Suzanne Weston–Kirkegaard, a forensic serologist, that she detected the presence of amylase on the sleeve of defendant's sweat jacket where the bite was believed to have occurred and that this was indicative of the presence of saliva. Defendant argues that the state failed to establish adequate foundation for the form of the testimony and its acceptance in the scientific community. Defendant, however, did not object to this testimony at trial and any error clearly was not plain error of a prejudicial nature, especially given the other evidence linking the victim, Raymond Rice, to the bite mark on defendant's arm.

(b) Defendant in his *pro se* supplemental brief claims that the trial court erred in admitting evidence seized pursuant to the search warrants, that the trial court failed to represent him effectively, and that newly-discovered evidence entitles him to a new trial. Contrary to what defendant argues, we conclude that the trial court properly admitted the evidence seized in the warranted searches. The record on direct appeal fails to support the conclusion that defendant is entitled to a new trial on the ground that his trial attorney failed to represent him effectively. Defendant's allegation that he is entitled to a new trial on the ground of newly-discovered evidence is not properly before this court.

In summary, our review of the record satisfies us that the evidence was sufficient to support the guilty verdicts and fails to support defendant's contention that he was denied a fair trial.

Affirmed.