DARLENE GILKEY,

Plaintiff and Appellant,

v.

MIKE SCHWEITZER, M.D.,

Defendant and Respondent.

No. 98-646.

295 Mont. 345

983 P.2d 869

Submitted on Briefs April 1, 1999.

Decided August 10, 1999.

Appeal from the District Court of Yellowstone County.

Thirteenth Judicial District.

Honorable Diane G. Barz, Judge.

Wife filed action individually and on behalf of the estate of her deceased husband against doctor alleging he negligently inserted an epidural catheter in his thoracic spine, failed to obtain his informed consent for the procedure and injury resulted. Summary

judgment was granted doctor for failure to establish a prima facie case. Wife appealed. The Supreme Court, Justice Trieweiler, held that the district court abused its discretion when it decided wife's expert witness was not qualified to testify.

Reversed and remanded.

For Appellant: James G. Edmiston III, Edmiston & Schermerhorn; Billings.

For Respondent: Herbert I. Pierce III and Colette Baumgardner Davies, Crowley, Haughey, Hanson, Toole & Dietrich, Billings.

JUSTICE TRIEWEILER delivered the opinion of the Court.

¶1 The plaintiff, Darlene Gilkey, individually and on behalf of the estate of her deceased husband, Joseph Gilkey, filed a complaint in the District Court for the Thirteenth Judicial District in Yellowstone County, in which she alleged that the

defendant, Mike Schweitzer, M.D., failed to obtain her husband's informed consent for placement of an epidural catheter in his

thoracic spine while under anesthesia and that Dr. Schweitzer negligently inserted the catheter, and that as a result her husband

was injured. The District Court granted summary judgment to Dr. Schweitzer on the basis that Gilkey failed to establish a

prima facie case. She appeals from that order and judgment. We reverse the judgment of the District Court.

¶2 The issue on appeal is whether the District Court erred when it relied on the Daubert[1] rule to exclude opinion evidence offered by Gilkey to prove that the defendant breached the applicable standard of care.

FACTUAL BACKGROUND

¶3 The following facts were before the District Court by deposition or affidavit. Because Gilkey's claim was resolved by summary judgment, we set forth the facts most favorable to her claim. However, we note these facts are controverted and

factual issues have not been resolved.

¶4 Joseph Gilkey was afflicted with cancer of the colon and rectum which, despite treatment, spread to his left lung. On June 4, 1991, he underwent a pneumonectomy to remove part of the lung. In order to remove the lung, the procedure required that

a large incision be made from approximately the middle of Joseph's back to the middle of his chest.

¶5 Anesthesiologist Mike Schweitzer, M.D. discussed with Joseph the significant pain that he would probably experience following the surgery and recommended that he be allowed to insert a "thoracic spinal epidural catheter" between the vertebrae of Joseph's thoracic spine and alongside his spinal cord.

From the catheter, anesthetic drugs could then be delivered directly to the area of the spinal cord nearest the pain source. The purpose of this procedure was to significantly reduce Joseph's postsurgical pain without administration of postoperative narcotics in a manner that would disburse them throughout his entire body. Joseph consented to the procedure as described to him. Dr. Schweitzer later admitted that, during his discussion with Joseph about the procedure, he did not differentiate the risks of administering an epidural catheter while a patient is asleep under general anesthesia as opposed to while a patient is awake.

¶6 Dr. Schweitzer's first attempt to insert the catheter failed, but on the second attempt, Joseph's medical chart indicates that the catheter was inserted "without complications." However, after the surgery Joseph's left leg was paralyzed. By the time he left the hospital a few days later he was able to walk with a cane, but according to one of Gilkey's medical experts, he continued to manifest objective signs of upper motor neuron injury until his death from cancer approximately two and one-half years later.

¶7 Gilkey retained Eric Grigsby, M.D. as an expert. It was his opinion that Dr. Schweitzer violated the standard of care when he failed to inform Joseph that a greater risk was posed by the catheterization procedure if it was administered while Joseph was under general anesthesia, as opposed to while he was awake. Dr. Grigsby opined in his deposition that Dr. Schweitzer breached the standard of care "with regard to ... informed consent."

¶8 Dr. Schweitzer moved for summary judgment on the basis that there was no medical or scientific basis to support Dr. Grigsby's conclusion that placement of a thoracic spinal epidural catheter while a patient is anesthetized increases the risk of injury. The District Court agreed and concluded that Dr. Grigsby's opinion regarding the standard of care was inadmissible because it was not based on scientific evidence supported by reliable methodology or research. The District Court awarded summary judgment on the basis that without a qualified medical opinion, Gilkey could not prove medical malpractice.

STANDARD OF REVIEW

¶9 Our standard of review on appeal from summary judgment orders is de novo. See Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239,242, 907 P.2d 154, 156; Mead v.

DARLENE GILKEY,

[295 Mont. 348] M.S.B., Inc. (1994), 264

Mont. 465,470, 872 P.2d 782, 785. We review a district court's summary judgment to determine whether it was correctly decided pursuant to Rule 56, M.R.Civ.P., which provides that summary judgment is only appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.

## DISCUSSION

¶10 Did the District Court err when it relied on the Daubert rule to exclude Dr. Grigsby's opinion regarding the proper standard of care?

¶11 The District Court concluded that Gilkey's efforts to establish a standard of care for informed consent through expert witness testimony were efforts to introduce novel scientific evidence of the type contemplated by this court in Hulse v. State of

Montana, 1998 MT 108, 289 Mont. 94, 961 P.2d 75, and by the United States Supreme Court in Daubert v. Merrell Dow Pharm. (1993), 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469. The District Court further concluded that Dr. Grigsby was not qualified pursuant to Rule 702, M.R.Evid., to testify concerning the applicable standard of care in this case.

¶12 Gilkey contends that she sought to offer, through Dr. Grigsby, medical opinion testimony that Dr. Schweitzer deviated from the appropriate standard of care as a result of his failure to obtain Joseph's implied consent. She argues that Dr. Grigsby's

testimony was not offered to establish that placing the catheter during sleep deviates from the standard of care, but to establish that a reasonable medical doctor would have informed his patient of the difference in potential risks involved if the procedure is

performed while the patient is asleep rather than awake, and that without that advice, informed consent could not be given. She contends that Dr. Grigsby's credentials as a Board Certified Anaesthesiologist, qualified him to express that opinion.

¶13 Gilkey contends that Dr. Grigsby's opinion does not introduce the type of novel scientific evidence contemplated by Hulse and Daubert, but simply the opinion of another medical professional as to what information a doctor should provide to

his patient so that the patient may give his informed consent to a medical procedure.

¶14 Dr. Schweitzer contends that Dr. Grigsby's testimony articulates a novel theory, which is that there is an increased risk from placing the catheter while asleep, rather than while awake. He contends that because Dr. Grigsby's opinion relies on this theory to support his conclusion that it was necessary for Dr.

Schweitzer to inform Joseph of the difference in levels of risk, Dr. Grigsby was required to show that his opinion was arrived at by reliable scientific methods or that there was some medical literature or other objective evidence supporting his opinion.

¶15 The District Court has broad discretion to determine whether evidence is relevant and admissible, and absent a showing of abuse of discretion, the trial court's determination will not be overturned. See Burlingham v. Mintz (1995), 270 Mont.

277,279, 891 P.2d 527, 529.

¶16 Rule 702, M.R.Evid. provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

¶17 [1] In Montana, the threshold obligation of a plaintiff in a medical malpractice case is twofold: first, evidence must be presented to establish the standard of professional care in the type of case involved; second, it must be shown that the doctor negligently departed from this recognized standard in his treatment of the plaintiff. This is typically established through expert testimony because the conduct complained of is usually not readily ascertainable by a layman. See Montana Deaconess Hosp.

v. Gratton (1976), 169 Mont. 185,189, 545 P.2d 670, 672.

¶18 "[T]he Daubert test should be used only to determine the admissibility of novel scientific evidence." Hulse, ¶ 57, reaffirming State v. Cline (1996), 275 Mont. 46, 909 P.2d 1171. The issue in Daubert was the admissibility of a novel scientific theory that the ingestion of the antinausea drug Bendectin by pregnant women caused birth defects in their children. See Daubert, 509 U.S. at passim, 113 S. Ct. at passim, 125 L. Ed. 2d at passim. Justice Blackmun, writing for the majority in Daubert, noted that in addition to scientific expert testimony, "Rule 702 also applies to 'technical, or other specialized

knowledge.' [The Court's] discussion is limited to the scientific context because that is the nature of the expertise offered here." Daubert, 509 U.S. at 590 n.8, 113 S. Ct. at 2795 n.8, 125 L. Ed. 2d at 481 n.8.

¶19 The issue in Hulse was the admissibility of opinion testimony from a police officer that a person's failure of the Horizontal Gaze Nystagmus (HGN) field sobriety test accurately predicted intoxication. See Hulse, ¶ 43. The defendant argued that the

HGN test was novel scientific evidence to which the Daubert test must be applied. We disagreed that Daubert applied to the facts in that case. It is equally important to note what was said about Daubert's application to circumstances such as these. Citing with approval, decisions from other jurisdictions that involved medical opinion testimony,

DARLENE GILKEY,

we stated:

Other jurisdictions have similarly held that Daubert is limited to novel scientific evidence. Recently, a federal district court concluded that "Fed.R.Evid. 702 is still viable and the principles enunciated in Daubert should be narrowly limited to controversial and novel scientific evidence." Thornton v. Caterpillar, Inc. (D.S.C. 1997), 951 F.Supp. 575, 578 (holding that mechanical engineer's testimony concerning design defect and lack of adequate warning fell within technical and specialized knowledge, "not within the narrowly limited area of unique, untested and novel scientific evidence as enunciated in Daubert"). See Waitek v. Dalkon Shield Claimants Trust (N.D. Iowa 1996), 934 F.Supp. 1068, 1087-89 n.10 (providing an extensive list of federal courts so holding) (concluding in the case sub judice that Daubert did not apply to a gynecologist's expert testimony because his opinions "were not based on a novel scientific test or a unique, controversial methodology or technique; rather, he based his opinions on his experience and training as both a gynecologist and as a doctor experienced in the use of and medical problems associated with the Dalkon Shield"). See also Williams v. Hedican (Iowa 1997), 561

N.W.2d 817, 825-27 (concluding, in dicta, that the approach taken in Thornton and other federal courts restricting Daubert in favor of a conventional Rule 702 analysis was reasonable); Collins v. Commonwealth (Ky. 1997), 951 S.W.2d 569, 574-75 (concluding that although the court previously adopted the Daubert analysis, Daubert was not triggered because the doctor's expert testimony concerned basic female anatomical findings that"did not involve any novel scientific techniques or theories"); and State v. Hodgson (Minn. 1994), 512 N.W.2d 95, 98 (acknowledging that Minnesota follows the Frye test and declining to address the impact of Daubert because the issue sub judice involved the expert testimony of a forensic odontologist concerning bite mark

analysis which was not a novel or emerging type of scientific evidence).

See Hulse, ¶ 58 (emphasis added).

¶20 In this case, Gilkey sought to establish through Dr. Grigsby's testimony the amount of information an anesthesiologist should provide to his patient in order to obtain the patient's informed consent prior to performing a procedure to insert a

thoracic spinal epidural catheter. Dr. Grigsby's opinion required the specialized knowledge of a medical professional. It did not involve novel scientific evidence. Therefore, we conclude that it was not subject to the Daubert foundational requirements.

¶21 Dr. Schweitzer has argued that there is no scientific evidence that there is an increased risk to the patient when the catheter is placed during sleep. Gilkey responds that a patient's simple ability to experience and report pain, if awake, makes the procedure safer while awake and that this common sense observation does not require scientific support. These arguments go to the weight of Dr. Grigsby's opinion, rather than to the admissibility of the opinion.

DARLENE GILKEY,

¶22 [2] We conclude that the District Court abused its discretion when it decided that Dr. Grigsby was not qualified to testify to the applicable standard of care in this case and that his testimony was not admissible. We reverse the decision of the

District Court to exclude Dr. Grigsby's testimony.

¶23 The District Court's award of summary judgment was based on its conclusion that without expert testimony which established a standard of care, Gilkey could not establish the existence of a legal duty as part of her prima facie case. Because we conclude that the District Court erred when it excluded Dr. Grigsby's opinion testimony, we reverse the order which granted summary judgment and remand for proceedings consistent with our decision.

CHIEF JUSTICE TURNAGE, JUSTICES LEAPHART, NELSON and GRAY concur.

1. Daubert v. Merrell Dow Pharm. (1993), 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469.