No. 99-190

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 84

299 Mont. 182

997 P. 2d 114

KESTER ROMANS,

Plaintiff and Appellant,

v.

GARY LUSIN and BOZEMAN PHYSICAL

THERAPY CENTER,

Defendants and Respondents.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Joseph W. Rohan; Halliday & Watkins, Salt Lake City, Utah

For Respondents:

Richard E. Gillespie; Keller, Reynolds, Drake, Johnson & Gillespie,

Helena, Montana

_____

Submitted on Briefs: July 22, 1999

Decided: April 4, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Kester Romans (Romans) appeals from the judgment of dismissal with prejudice entered by the Eighteenth Judicial District Court, Gallatin County, on its grant of summary judgment to the defendants. We affirm.

¶2 The overall issue on appeal is whether the District Court erred in granting summary judgment to the defendants. In resolving that issue, we address the following:

¶3 1. Is expert testimony necessary for Romans to establish the applicable standard of care and a breach of that standard?

¶4 2. Does Romans' Rule 26(b)(4), M.R.Civ.P., disclosure satisfy his burden for purposes of avoiding summary judgment?

¶5 3. Does the doctrine of *res ipsa loquitur* apply in this case?

### BACKGROUND

¶6 In late 1993, Dr. John Campbell, an orthopedic surgeon, began treating Romans for a right foot and heel injury. Dr. Campbell referred him to physical therapist Gary Lusin

(Lusin) at the Bozeman Physical Therapy Center (P.T. Center) for a functional capacities evaluation (FCE) to assist in developing a workers' compensation impairment rating. Lusin conducted the FCE to determine Romans' specific abilities and limitations secondary to his right foot injury.

¶7 Romans subsequently sued Lusin and the P.T. Center alleging that Lusin negligently performed the FCE, resulting in injury to his back, and that the P.T. Center was liable for Lusin's negligence on the theory of *respondeat superior*. Hereafter, we refer to Lusin and the P.T. Center collectively as Lusin.

¶8 Discovery ensued. As part of his first set of interrogatories to Romans, Lusin requested the identity of each person Romans expected to call at trial as an expert witness to opine about the applicable standards of care, breach of those standards, proximate cause of the alleged injury and damages. Romans answered the interrogatories by stating that "[t]he identity of the persons [sic] or persons has not been ascertained at this time, I will supplement this interrogatory when the information becomes available."¶9 In the meantime, the parties' counsel prepared a joint proposed scheduling order. The original scheduling order entered by the District Court required the exchange and filing of expert witness lists, together with Rule 26(b)(4), M.R.Civ.P., expert disclosures, not later than July 10, 1998, and completion of discovery by October 20, 1998. The scheduling order was amended twice, with a final date for the exchange and filing of expert witness lists and Rule 26(b)(4) expert disclosures of October 5, 1998. The October 20, 1998 date for completion of discovery remained unchanged.

¶10 Lusin moved for summary judgment on October 27, 1998, on the basis that Romans had not identified an expert witness to provide the testimony required to establish the elements of his cause of action. At the pretrial conference on November 9, 1998, the District Court gave Romans until December 1, 1998, to file his expert witness list and disclosures. Romans failed to do so.

¶11 The court heard arguments on Lusin's summary judgment motion on December 21, 1998. Romans argued that he had alleged an action in ordinary negligence and, as a result, expert testimony was unnecessary because the duty element was merely the exercise of ordinary care. Romans also stated, however, that if an expert were necessary, Lusin knew by August of 1998 that Dr. Richard Nelson, a neurologist, would be his expert. He also contended he could rely on the doctrine of *res ipsa loquitur* to prove breach and causation. The court determined that *res ipsa loquitur* did not apply and gave Romans until January

14, 1999, to provide the Rule 26(b)(4), M.R.Civ.P., disclosure by Dr. Nelson. The court also stated that, if Romans' expert disclosure was not timely made or was inadequate, Lusin could renew his motion for summary judgment.

¶12 Romans mailed his Rule 26 disclosure on January 14, 1999, but it was not filed until January 21, 1999, two days after Lusin renewed his motion for summary judgment. The District Court concluded that, even if *res ipsa loquitur* were applicable, it would not permit a presumption of negligence, but would require Romans to establish a *prima facie* case that Lusin breached a duty of care via expert testimony. The court further concluded that Romans had failed to make the Rule 26(b)(4), M.R.Civ.P., expert disclosure required by law and the court's orders. The District Court granted Lusin's motion for summary judgment, dismissed Romans' complaint against both defendants with prejudice and entered judgment accordingly. Romans appeals.

## *STANDARD OF REVIEW*

¶13 This Court reviews a district court's ruling on a motion for summary judgment *de novo*, using the same Rule 56, M.R.Civ.P., criteria applied by the district court. *Gilkey v. Schweitzer*, 1999 MT 188, ¶ 9, 295 Mont. 345, ¶ 9, 983 P.2d 869, ¶ 9. Rule 56(c), M.R. Civ.P., provides that summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Gomez v. State*, 1999 MT 67, ¶ 7, 293 Mont. 531, ¶ 7, 975 P.2d 1258, ¶ 7.

## *DISCUSSION*

¶14 **1. Is expert testimony necessary for Romans to establish the applicable standard of care and a breach of that standard?**

¶15 Romans contends that his action against Lusin is for ordinary negligence--not medical malpractice or professional negligence--and, therefore, he is not required to present expert testimony to establish Lusin's duty and a breach of that duty. Consequently, he argues that the District Court erred in concluding he needed expert testimony to establish the elements of his cause of action.

¶16 We addressed a somewhat analogous situation in *Webb v. T.D.* (1997), 287 Mont. 68, 72, 951 P.2d 1008, 1011, where the issues were whether a physician who examines a

person at the request of a third party has a duty of care to the examinee and, if so, the scope of that duty. There, the physician contended he owed no duty as a matter of law because no physician-patient relationship existed between himself and the examinee. *Webb*, 287 Mont. at 72, 951 P.2d at 1011. We rejected that argument. Based on the standard of ordinary care set forth in § 27-1-701, MCA, we concluded that a duty is imposed on such a physician "to exercise the level of care required by the examiner's professional training and experience . . . ." *Webb*, 287 Mont. at 77, 951 P.2d at 1014. Moreover, we concluded that the scope of that duty "must necessarily be developed on a case-by-case basis." *Webb*, 287 Mont. at 77, 951 P.2d at 1014.

¶17 In this case, Romans' claim boils down to an allegation that Lusin breached his duty of care in selecting the specific tasks he had Romans perform during the FCE. Here, as in *Webb*, Lusin administered the FCE at the request of a third party and, thus, no patient-therapist relationship existed. Here, however, it is undisputed that Lusin owed Romans a duty of care. The Restatement (Second) of Torts § 229A (1965), provides that "one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade . . . ." Similarly, in *Webb*, we concluded that the duty owed was consistent with the level of care required by the examiner's professional training and experience. *Webb*, 287 Mont. at 77, 951 P.2d at 1014. On these bases, Lusin had a duty to exercise the skill and knowledge in conducting the FCE which is consistent with the training and experience required for his profession.

¶18 In addition, while the tasks themselves, which included lifting and moving weights and objects between various heights and locations, undoubtedly are within the common knowledge and understanding of a jury, the selection of which tasks should be performed, which weights and objects used and the sequence of the tasks are not. Indeed, Dr. Campbell testified in his deposition that he was not trained to perform an FCE. Similarly, Dr. Herbert Prussack, a neurologist, testified he orders FCEs, but gave no indication that he was qualified to perform them. Given this testimony, it is clear that administering an FCE requires special education, knowledge and skill. Even absent such testimony, however, it is clear that matters concerning the standard of care owed by a physical therapist in conducting an FCE are outside the common experience and knowledge of lay people and, as a result, expert testimony is required to assist them in resolving such cases. Thus, applying *Webb* to the present case, Lusin's duty-that is, the standard of care applicable to the administration of an FCE-can be established only through expert testimony which takes into account the training and experience of a physical therapist

relative to administering an FCE.

¶19 Romans argues that *Webb* is distinguishable on its facts and, consequently, our holding is inapposite because he did not seek or receive advice from Lusin and his injury occurred during the FCE. While it is true that our holding in *Webb* focused on the duty of a physician performing an independent medical exam at the request of a third party to discover and communicate conditions to the examinee, the basis of our holding was the conclusion that a physician owed a duty to an examinee who was not his patient "to exercise the level of care required by the examiner's professional training and experience . . . ." *Webb*, 287 Mont. at 77, 951 P.2d at 1014. The same is true regarding the duty of physical therapist Lusin in the present case.

¶20 Romans also contends that the present case is factually analogous to *Greenberg v. Perkins* (Colo. 1993), 845 P.2d 530, and we should apply its holding here. We disagree.

¶21 In *Greenberg*, an examinee allegedly injured during an FCE sued the nontreating physician to whom she had been referred for examination and who then referred her to another physician who performed the FCE. *Greenberg*, 845 P.2d at 530. The referring physician contended he owed no duty since no physician-patient relationship existed between himself and the examinee. *Greenberg*, 845 P.2d at 533. After a lengthy analysis and discussion, the Colorado court concluded that the referring doctor owed "a duty to act with reasonable care so as not to cause [the examinee] injury by referring her for testing of a type that foreseeably would result in injury based on information known to him." *Greenberg*, 845 P.2d at 538. *Greenberg* did not hold that the duty of care must be commensurate with professional training and expertise, thus requiring expert testimony.

¶22 Romans' contention that his case and *Greenberg* are factually analogous is incorrect. While both cases involve alleged injuries during an FCE, Romans is suing the person who performed the FCE; in *Greenberg*, the defendant was the physician who referred the examinee for the FCE. Moreover, the duty question involved in *Greenberg* was "a matter of first impression in [Colorado]." *Greenberg*, 845 P.2d at 533. This Court previously has resolved a similar question in *Webb* by concluding that, absent a physician-patient relationship, a physician owes a duty to an examinee "to exercise the level of care required by the examiner's professional training and experience . . . ." *See Webb*, 287 Mont. at 77, 951 P.2d at 1014. Finally, we observe that, while the Colorado court did not state that the duty imposed in *Greenberg* must be defined in terms of the physician's professional training and experience, that question was not squarely before it. Indeed, that court

indicated its discussion was limited to that necessary to resolve the narrow question of whether a duty existed. *See Greenberg*, 845 P.2d at 533. Nevertheless, its discussion noted that when, as in the case presently before this Court, an examination is undertaken for the sole benefit of a third party, the examiner owes a duty to "exercise a level of care that is consistent with his professional training and expertise." *See Greenberg*, 845 P.2d at 536 (citation omitted). That is precisely what we held in *Webb*.

¶23 We hold, therefore, that expert testimony is necessary for Romans to establish the applicable standard of care and a breach of that standard in this case.

¶24 **2. Does Romans' Rule 26(b)(4), M.R.Civ.P., disclosure satisfy his burden for purposes of avoiding summary judgment?**

¶25 The original and amended scheduling orders in this case required Rule 26(b)(4) expert disclosures by certain dates and, when Romans failed to provide them, the District Court twice ordered him to do so. Romans ultimately filed his expert disclosure after the final date set by the court.

¶26 Romans contends, however, that the District Court erred in concluding he was required to file Rule 26(b)(4) expert disclosure and in dismissing his complaint on the basis he did not do so. Given our conclusion above that expert testimony is required for Romans' action against Lusin, we need not address Romans' contention that expert disclosure is not required further.

¶27 Romans also asserts that he filed the required disclosure and it was sufficient to avoid summary judgment. The initial problem in this regard is that Romans' filing was not timely made under the District Court's order. Thus, while Romans' disclosure was of record at the time the District Court granted summary judgment, it appears the court was not aware of it and dismissed Romans' action under *Estate of Nielsen v. Pardis* (1994), 265 Mont. 470, 473, 878 P.2d 234, 236, for failure to produce the expert testimony needed to establish a *prima facie* case. To avoid any appearance that Romans' Rule 26(b)(4) disclosure has not been properly considered, however, we address whether it was sufficient to avoid summary judgment.

¶28 Rule 26(b)(4)(A)(i), M.R.Civ.P., permits a party to require any other party

to identify each person whom the other party expects to call as an expert witness at

trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

Romans' Rule 26(b)(4) disclosure identified Dr. Nelson as his expert and included Dr. Nelson's report. The expert disclosure also identified three other physicians whose opinions--and the bases therefor--were stated to be contained in their respective depositions. Finally, Romans' disclosure indicated he might call other treating health care providers and the bases for their opinions were contained in the medical records which had been provided to Lusin. Because the District Court had limited Romans' expert disclosure to Dr. Nelson, identified earlier as Romans' expert, we limit our review of the disclosure to Dr. Nelson's report.

¶29 The entirety of Dr. Nelson's report, advanced by Romans as sufficient expert testimony to establish the applicable standard of care and Lusin's breach of that standard, is as follows:

> Reviewing Kester Romans [sic] status initial injury to ankle with tarsal tunnel decompression. Following that with physical therapy which exacerbate [sic] pain in L-5 area and onset of jerking and movement revealed of the foot and leg. No surgical lesions of L-5 has [sic] been found but revealed conjoined nerve root at S-1, S-2, on left, facet hypertrophy and pain of a referred pain origin is not due to nerve root pain carrying from discal root facet or other support structures.

> I would like to see discography done to tell us if discal referred pain is present as per Dr. John Moseley suggested [sic].

> His movement disorder of the lower extremity is responding possitively [sic] to Depakene and Baclofen, but it still persists.

> Peripheral traumatic injury may have superimposed itself on myoclonic disorder emanating from basal ganglia. Further studies would be necessary, i.e., discography and I recommend magnetic resonance spectography or a pet scan to deliniate [sic] brain level source of the movement disorder.

Dr. Nelson's report addresses Romans' medical history and recommends additional studies necessary for a medical diagnosis. However, it does not address or establish the standard

of care applicable to a physical therapist conducting an FCE or a breach of that standard by Lusin; indeed, Dr. Nelson's report does not even mention the FCE.

¶30 We hold, therefore, that Romans' Rule 26(b)(4), M.R.Civ.P., disclosure does not satisfy his burden for purposes of avoiding summary judgment.

¶31 **3. Does the doctrine of *res ipsa loquitur* apply in this case?**

¶32 The doctrine of *res ipsa loquitur* permits an inference of negligence on the part of one in control of an instrumentality which causes injury when (1) the injury occurs without any fault of the injured person; (2) the instrumentality is under the exclusive control of the defendant at the time of the injury; and (3) the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care. Even when these elements are met, however, the plaintiff must make a *prima facie* case that the defendant breached a duty of care. *See Clark v. Norris* (1987), 226 Mont. 43, 48-49, 734 P.2d 182, 185 (citations omitted).

¶33 In response to Romans' argument that he was entitled to rely on the doctrine of *res ipsa loquitur* for the causation element of his action, the District Court determined that *res ipsa loquitur* was inapplicable in this case because Romans failed to establish the duty and breach elements of his action and, even if he had, the elements of *res ipsa loquitur* could not be satisfied. Romans asserts error.

¶34 Romans first contends that the District Court's refusal to apply the doctrine of *res ipsa loquitur* was premature because the court had not defined the duty Lusin owed Romans. Romans apparently misunderstands the relative obligations of a plaintiff and a trial court.

¶35 It is well settled that whether a legal duty exists is a question of law to be determined by the court. *See Nautilus Ins. Co. v. First Nat. Ins., Inc.* (1992), 254 Mont. 296, 299, 837 P.2d 409, 411. As set forth above, however, it is undisputed in this case that Lusin owed Romans a duty. The issues here relate to what that duty is--that is, the applicable standard of care--and whether Lusin breached it, and the plaintiff has the burden of coming forward with evidence establishing the standard of care and a breach thereof. *See Carlson v. Morton* (1987), 229 Mont. 234, 240, 745 P.2d 1133, 1137; *Zimmerman v. Robertson* (1993), 259 Mont. 105, 108, 854 P.2d 338, 340.

¶36 As discussed above, Romans did not establish the standard of care applicable to the

administration of an FCE through expert testimony. Nor did he establish a breach of that standard by Lusin. Because the doctrine of *res ipsa loquitur* does not relieve a plaintiff of the burden of making a *prima facie* case that the defendant breached a duty of care (*Clark*, 226 Mont. at 48, 734 P.2d at 185), we conclude that the doctrine of *res ipsa loquitur* is not applicable here. Consequently, we need not address Romans' second contention, which is that the elements of *res ipsa loquitur* are met.

¶37 We hold that the District Court did not err in granting summary judgment to Lusin.

¶38 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART