**Rivera v. Lawrence**

204

C.P. of Monroe County, no. 4325-1998.

*Edward R. Eidelman,* for plaintiff.
*Michael Perry,* for defendant Pocono Medical Center.
*Mark H. Scoblionko,* for defendant Lawrence.

CHESLOCK, *J.,* November 8, 2001—The plaintiffs filed a complaint that alleged, among other things, negligence on the part of Dr. Lawrence and Pocono Ob/Gyn Associates and Vicki Marsh regarding the August 16, 1995 visit to the clinic. On or about July 16, 2001, defendants filed a motion for summary judgment.[1] Shortly thereafter, plaintiff filed a timely answer. This court heard

---

1. All the parties agree that the motion for summary judgment in favor of Vicki Marsh be granted.

arguments on the motion and now we are ready to decide the matter.

The relevant facts are as follows. Plaintiff first presented to Planned Parenthood of Northern New Jersey and was determined pregnant in March 1995. Sometime thereafter she moved to Pennsylvania. Plaintiff reported to Pocono Community Health Center for an examination on July 24, 1995, and a follow-up appointment on August 16, 1995. Dr. Lawrence saw her during the second visit. The clinic was typically staffed with nurse midwives. On Wednesdays, five local Ob/Gyn doctors would see patients of the clinic on a rotating basis. Patients were scheduled for either the second or third visit on a Wednesday so as to see a doctor. Dr. Lawrence saw patients at the clinic on August 16, 1995. The medical records of the plaintiff up to then, indicated "problems . . . obesity . . . unsure last menstrual period . . . borderline diabetes." Upon evaluation of her record, including a glucose test, Dr. Lawrence did not deem plaintiff to be "exceptionally high risk" with respect to the pregnancy.

The party moving for summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Drapeau v. Joy Technologies Inc.,* 447 Pa. Super. 560, 563, 670 A.2d 165, 167 (1996), *allocatur denied,* 546 Pa. 644, 683 A.2d 883 (1996), citing *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 204, 412 A.2d 466, 468-69 (1979). The record is viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Ertel v. Patriot-News Co.,* 544 Pa. 93, 98-99, 674

A.2d 1038, 1041 (1996), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996).

The party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings but must file a response identifying: (1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced. Pa.R.C.P. 1035.3.

The court must ignore controverted facts in the pleadings and restrict its view to allegations in the pleadings that are uncontroverted and to material filed in support of and in opposition to a motion for summary judgment. *Nationwide Mutual Insurance Co. v. Nixon,* 453 Pa. Super. 70, 75, 682 A.2d 1310, 1313 (1996), *allocatur denied,* 548 Pa. 613, 693 A.2d 589 (1997). Summary judgment may be granted only where the right to it is free and clear from doubt. *Musser v. Vilsmeier Auction Co. Inc.,* 522 Pa. 367, 370, 562 A.2d 279, 280 (1989), citing *Thompson Coal,* 488 Pa. at 204, 412 A.2d at 468.

This court feels that the motion for summary judgment should be denied because we find a genuine issue of material fact exists for the following reasons:

(a) First, plaintiffs have met their burden of showing that a genuine issue of law exists as to the existence of a physician-patient relationship. The cases cited by defendants all refer to a physician who examines an individual at the request of a third party, typically an insurance company. For example, in a medical partnership a doctor not

involved in the care or treatment of a certain patient has no duty to his partner, the negligent physician, except that arising out of partnership law. A "partnership" between a doctor and a health clinic differs in that only the doctor not the clinic can actually treat and examine the patient. Here, patients of the clinic were scheduled on Wednesdays expressly to see an obstetrician. That plaintiff was not a continuing patient of Dr. Lawrence is not dispositive. Instead, the obstetricians, albeit on a rotational basis, held themselves out to the patients who sought their care as the primary caregivers.

Furthermore, it is important to note that the rotating obstetricians here volunteered their service rather than being appointed as a matter of hospital regulation. Although the agreement to serve the clinic may have been a form of public service, the rotating physicians could still expect to benefit professionally in terms of future referrals by patients and nurses from the clinic. Whether or not the doctors were independent contractors or agents of the clinic, the patients reasonably believed the services rendered to be in the context of the whole pregnancy.

Under Pennsylvania law, a physician-patient relationship occurs where the physician is involved in the care and treatment of the patient. *Promubol v. Hackett,* 454 Pa. Super. 622, 686 A.2d 417 (1996). Although Dr. Lawrence only saw the plaintiff once, during that visit he was the exclusive administrator of care and treatment and, thus, came within the scope of the physician-patient relationship.

(b) Second, plaintiffs have established sufficient causation between the negligent acts of Dr. Lawrence averred

by their experts and the resulting harm. The law in Pennsylvania regarding medical malpractice is well settled: Once a plaintiff has introduced evidence that the defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm. *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978).[2] Importantly, a plaintiff need not exclude every possible explanation and the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve defendant from liability unless he can show that such other cause would have produced the injury independent of his negligence. *Jones v. Montefiore Hospital,* 494 Pa. 410, 416, 431 A.2d 920, 923 (1981). Once there is sufficient testimony to establish that (1) the physician failed to exercise reasonable care, (2) such failure increased the risk of physical harm to the plaintiff, and (3) such harm resulted, then it is a question properly left to the jury. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 584 A.2d 888 (1990).

We shall discuss plaintiffs' experts' reports in turn. The first expert, Dr. Portman, is not an obstetrician but a neurologist. Dr. Portman suggested that the "pediatric and neurologic caregivers" failed to perform neurological

---

2. The proof required for a prima facie showing is the kind alleged in the present case; that is, evidence from an expert or experts who will testify to a reasonable degree of certainty that the acts of the physician deviated from good and acceptable standards and that such deviation was a proximate cause of the harm suffered. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 62, 584 A.2d 888, 891 (1990).

work up for neonatal seizures. Further, Dr. Portman suggests that obstetric management should have been more vigorous, to shorten the exposure of the fetus to untreated oligohydramnios. This condition, he states, was present in the third trimester. Here, there is no specific negligence claim against the defendant, since the condition was known to be present in the third trimester but not before then.

On the other hand, the statements by Dr. Domnitz go directly to defendant's conduct. More important, his report speaks to the link between the alleged negligent acts and the resulting harm: "In my medical opinion, the prenatal care given to Ms. Rivera deviated from accepted standards of practice . . . her poor dates, maternal obesity and history of diabetes should have classified her as high risk . . . Had the higher risk nature of the pregnancy been recognized and the gestational diabetes appropriately diagnosed, this patient would have routinely been offered more comprehensive antepartum testing." The report therefore implies that failure to classify the patient as high risk based on her history was a factor in the harm that resulted during the last portion of the pregnancy. Dr. Dunn's report contains similar language:

"In summary, it is my opinion with a reasonable degree of medical certainty that there was a deviation of obstetrical standard of care. This contributed to the cerebral infraction, microcephaly and seizure disorder of the infant. This was clearly a high risk pregnancy and if fetal assessment had occurred earlier a decrease in amniotic fluid would have been noted. If attention had been paid to the patient's stated last menstrual period, there would have been a greater discrepancy in due date by

ultrasound. The clinical exam evidenced by the patient's decrease in weight and fundal height should have triggered further evaluation.

"It is my opinion within a reasonable degree of medical certainty that had antepartum screening occurred that this infant would have had a better outcome. It is further my opinion that failure to assess the fetus compromised the prognosis of the child."

Thus, the clear and reasonable inference is that but for the failure to classify plaintiff as high risk, fetal assessment and further evaluation would have occurred and the decrease in amniotic fluid noted earlier, before delivery. In this way, the harm was foreseeable.

In conclusion, we find that the plaintiffs here have established a genuine issue of material fact. First, there is an issue as to the existence of a physician-patient relationship. Second, plaintiffs' experts have averred negligence on the part of Dr. Lawrence sufficient to warrant a determination by the fact-finder, or jury.

## ORDER

And now, November 8, 2001, defendant's motion for summary judgment is hereby denied.